[S. F. No. 12451. In Bank.—July 31, 1929.]

H. H. PATTERSON et al., Appellants, v. SPRING VALLEY WATER COMPANY (a Corporation), Respondent.

H. M. Wright and Charles A. Shurtleff for Appellants.

McCutchen, Olney, Mannon & Greene, Warren Olney, Jr., and Robert L. Lipman for Respondent.

THE COURT.—This is an appeal by the plaintiffs from a judgment against them in an action to enjoin defendant from obstructing and diverting the waters of Alameda Creek. It is difficult to state the facts in detail without reference to maps and charts, and an adequate representation of all the physical features of the lands, watercourses, sloughs, channels, banks, etc., which have a bearing upon this litigation would be an unnecessary extension of this opinion.

The following brief, general statement of the facts we take from the appellants' opening brief, as it is a correct general statement, in so far as it goes, of what is shown by the pictures, maps and schedules introduced in evidence:

Plaintiffs own and operate a ranch of about three thousand five hundred acres, raising thereon sugar-beets, potatoes and other vegetables, and also alfalfa and some hay. It lies between Alvarado and Centerville, in Alameda County, and extends in a continuous tract, separated only by county roads, from Alameda Creek to the tide lands adjoining the bay of San Francisco. Plaintiffs claim no rights, however, by reason of the contiguity of a portion of their lands to the low-water channel of Alameda Creek, for the reason that the defendant, years before this litigation, acquired by condemnation from its then owner the right to divert all the water of the creek.

As Alameda Creek nears its point of discharge into the bay it divides into several channels or delta mouths. The oldest channel, the one of lowest elevation, called in the record Alameda Creek proper, feathers out to nothingness on the borders of Alvarado, and its waters, even in the lowest flow, spread widely before finally collecting themselves in the various salt-water sloughs of the bay shore. Two other channels of discharge, known as Crandall Slough and The Splits, take off the older channel at points higher up, and at different elevations above the bottom of Alameda Creek, and proceed through plaintiffs' lands to a point of discharge in a salt-water slough of San Francisco Bay, locally known as Patterson Slough or Coyote Hills Slough. Crandall Slough has existed without change of location on the ground since 1852. There is a dispute between the parties as to the length of time The Splits channel has been in existence, but the court has found that it has been in existence since 1915.

In the natural course of the flow of these two streams the waters, which are usually in large volume, naturally spread widely on each side of their main channels because of the flatness of the country, especially along the bay shore. In 1900, plaintiffs erected a levee across Crandall Slough at its terminal and also along the western boundaries of the ranch, for the purpose of keeping out the salt water of Patterson Slough, and in later years other levees have been built for the same purpose. The flooding caused by these levees and by

the embankments of county roads and of the railroad traversing the property has not only resulted in an irrigation of about twelve hundred acres of plaintiffs' land, but the heavy burden of silt carried by the winter flow of Alameda Creek, especially the heavy floods, has annually fertilized the flooded area by sedimentation, and in addition, these silt-laden waters have built up and reclaimed a large area of former salt-marsh by sedimentation and by leaching out the alkali from the underlying marsh soil. This process was continuous and cumulative until the acts of defendant cut down the flow of Alameda Creek.

Prior to the filing of the complaint herein on October 2, 1920, defendant for many years had diverted water from Alameda Creek, first at the Niles dam and later at the Sunol dam. In 1911, plaintiffs served a protest on defendant objecting to its diversions, and to threatened further diversion by the Calaveras dam of defendant, and these protests were repeated in later years. Defendant was engaged in erecting the Calaveras dam when the complaint was filed, but had not completed it, nor diverted any water by means of it, at the time of the trial. Intended diversions by defendant of other tributaries of Alameda Creek, as its needs required, were admitted.

Plaintiffs claim the right to the accustomed high flow of Alameda Creek under three alleged sources of title: First, as riparian proprietors along the high-water channel of discharge of Alameda Creek known as Crandall Slough; second, as riparian proprietors along The Splits, a similar high-water channel, flowing at a much lower stage than Crandall Slough; third, as land owners overlying an underground body of water fed and maintained by Alameda Creek.

The trial court found that Crandall Slough was not a natural watercourse, as it did not have the physical characteristics of a watercourse, and that The Splits was an artificial and not a natural channel. The only questions presented by the appeal with reference to the first two contentions of plaintiffs is whether or not these findings with reference to Crandall Slough and The Splits are sustained by the evidence.

As to the third contention of plaintiffs and appellants, with reference to underground or percolating waters, the

defendant admits that the ground waters of the plaintiffs' land are in large part replenished or supplied by percolation from Alameda Creek and does not contend that it has a right to reduce or diminish the supply of underground water to the plaintiffs' lands. However, defendant claims that its operations, conducted as the defendant intended and was bound to do, would not reduce or diminish the supply of underground water to the plaintiffs' lands. The lands of the plaintiffs are within the Alameda County water district and by agreement between the defendant and the water district, acting on behalf of the owners of the land within it, there had been submitted to the state water commission the question as to what were the terms and conditions, if any, upon which the defendant might store and divert water from the creek without affecting the supply of underground water. The state water commission made its award prescribing certain terms and conditions upon which it found the defendant might store and divert water without affecting the supply of underground water. The defendant contended that operations conducted in accordance with these terms and conditions would not affect plaintiffs' underground water rights. Defendant also contended that the plaintiffs were bound by a certain judgment in favor of defendant, rendered in an action brought against it by the Alameda County water district on behalf of and as the representative of land owners within the district, among whom were the plaintiffs, to protect the ground water rights of such owners. This action was brought and prosecuted with the personal knowledge, consent and co-operation of the plaintiffs and with the intention on their part of relying on the judgment therein if a favorable judgment were obtained. Judgment went against the district on the ground that it had, by agreement, submitted to the state water commission the question as to the conditions upon which the defendant could store and divert water without affecting the supply of underground water for the lands within the district and the water commission had prescribed these conditions and the defendant was complying with them.

■ We have examined the record for evidence upon which the findings with reference to Crandall Slough and The Splits might be based and we consider the evidence sufficient to support the findings which concludes the first

inquiry raised upon the appeal. ■ But appellants contend that if this court holds that The Splits is an artificial channel, created by appellants' work in 1915 and the years following, then appellants are common-law appropriators of the water contained therein and are entitled to an injunction against all diversions by respondent from Alameda Creek and its tributaries above The Splits, excepting diversions at Sunol, valid by prescription and diversions under the Calaveras appropriation, if the latter is valid, but it is also argued that appellants' right by appropriation is superior also to the Calaveras appropriation because of respondent's failure to prosecute that work with diligence. This position is met by respondent by pointing out that the plaintiffs did not plead common-law appropriation, nor was any evidence introduced for the purpose of showing appropriation, and the case was tried upon the theory that plaintiffs claimed a riparian right and that the contention of appropriation is made in this court for the first time. It is well settled that this may not be done; the case may not be tried in an appellate court without pleadings or evidence directed to the issues made in argument in such court.

■ As to the third contention of appellants, that they are entitled to the water as owners of land overlying an underground body of water, fed and· maintained by Alameda Creek, we think the defense of *res judicata* is available to defendant. The matter has been concluded by the recent case of *Coachella Valley County Water Dist.* v. *Stevens*, 206 Cal. 400 [274 Pac. 538]. Appellants seek to avoid the force of the holding in the case last cited by the claim that the judgment in the water district suit was not a judgment on the merits and, therefore, not a judgment in bar.

The judgment in the case of *Alameda County Water Dist.* v. *Spring Valley Water Co.*, 67 Cal. App. 533 [227 Pac. 953], was one of dismissal, based upon an agreement of settlement between the parties. The agreement is contained in the transcript on appeal. It recites, in effect, that the lands within the district are underlaid by water-bearing strata supplied from Alameda Creek; that yet there are at times large amounts of water which pass down the creek and into the bay without seeping into the underground strata, and that the parties have, for want of data, been unable

to agree upon any arrangement that would permit the Water Company to store and divert additional water from the creek without injury to the land owners. It is further recited that the parties desired to obtain, under the direction of a competent and disinterested board, the data necessary for a fair and intelligent solution of the problem and then to have such board determine, if it could, what would be a fair and intelligent solution.

Upon the basis of these recitals, the agreement goes on to provide that the state water commission, as then constituted, should gather the necessary data, the Water Company bearing the expense, and when the commission had, in its opinion, sufficient data, it should then, if it could, fix the terms and conditions upon which the Water Company might store and divert additional water without damage to the land owners. It was also provided that should the commission reach such a decision, such decision was to be final and conclusive upon the parties. Pending a decision by the commission, it was agreed that the water district suit should not proceed further, and if a decision should be reached by the commission, the suit was to be dismissed, but that if the commission was unable to reach a decision, the suit should then proceed as the parties might be advised, without prejudice because of the intervening lapse of time. It was also agreed that if the commission reached a decision the district would use its best efforts to have the same acquiesced in and observed by all the land owners of the district. According to the findings of the trial court in the instant case, the plaintiffs herein knew of this agreement, participated in its negotiations, knew its terms and approved of it. One of the Pattersons was a director in the water district.

The water commission made the investigations contemplated over a period of years and at the expense of the Water Company, and then gave a decision, fixing the terms and conditions upon which the Water Company might store and divert water without interfering with the underground supply of the land owners. After the decision of the water commission, the Water Company moved that the action between itself and the water district be dismissed on the ground that the district and its coplaintiffs were bound by the agreement to dismiss it, and this motion was granted and the action dismissed.

"It has been frequently held that a judgment or order dismissing an action based upon a stipulation or agreement of the parties settling and adjusting the claim or cause of action in suit and providing for the dismissal is a bar to another action for the same cause. Such a judgment has sometimes been said to be the equivalent of a *retraxit* at common law." (2 Freeman on Judgments, 5th ed., p. 1596.)

In *Crossman* v. *Davis*, 79 Cal. 603 [21 Pac. 963], it was said: "The only real question presented by the record is, whether or not a certain agreement between the grantors of the parties to this action, by which said parties compromised and dismissed an action pending between them, involving the title to this same property, was a bar to the plaintiff's claim to an interest therein. The court below found that the dismissal of the action under a special agreement involving other disputed matters was sufficient to bar the plaintiff's claim, and in this we think the court was right. (*Merritt* v. *Campbell*, 47 Cal. 542.)"

The conclusions we have reached make it unnecessary to discuss other matters developed by appellants at great length in their briefs, but presented for decision only upon the assumption that one or the other of the channels involved here is a natural watercourse, contrary to the findings, and that the plaintiffs and appellants have riparian rights therein.

The judgment is affirmed.

Rehearing denied.

All the Justices concurred.