[L. A. No. 8676. In Bank.—January 31, 1929.]

COACHELLA VALLEY COUNTY WATER DISTRICT, Appellant, v. PRESCOTT T. STEVENS, Respondent.

H. L. Carnahan, J. M. Stevens and Thomas C. Yager for Appellant.

W. G. Irving and Sarau & Thompson for Respondent.

SHENK, J.—This is an appeal from a judgment of dismissal following an order sustaining a demurrer to the complaint without leave to amend.

The action was brought to restrain the defendant, Stevens, from preventing, obstructing or impeding the natural flow of the Whitewater River in Riverside County, except as the same may be necessary for reasonable uses and purposes on the lands of said defendant.

It appears from the allegations of the complaint that the plaintiff is, and since January 16, 1918, has been, a county water district duly organized and existing under the provisions of an act called in these proceedings the County Water District Act (Stats. 1913, p. 1049); that from time immemorial there has existed a natural depression or valley in the county of Riverside, extending for a distance of approximately sixty miles southeasterly from the summit of San Gorgonio Pass, which is about 2,500 feet in elevation, to the westerly shore of the Salton Sea, which is 250 feet below sea-level; that within said pass for a distance of about sixteen miles southeasterly from said summit said valley is narrow and varies from two to four miles in width, and is bounded on the northerly side by San Gorgonio Mountain, 11,000 feet high, and on the southerly side by San Jacinto Peak, more than 10,000 feet high; that thence southerly said valley widens and is bounded on the northeasterly side by a chain of clay hills and on the southwesterly side by a spur of high, rocky, barren mountains constituting the foothills of San Jacinto Peak; that within said pass the grade of the valley is steep and generally exceeds eighty feet per mile; that from the southeasterly end of said pass for a distance of about twenty-four miles the grade is about forty feet per mile; that thence southeasterly from its westerly boundary which is about fifty feet above sea-level and for a distance of about twenty miles said valley spreads into a broad and nearly level plain commonly called Coachella Valley or plain, sloping gently toward the Salton Sea; that the Whitewater River is a natural innavigable stream flowing in a well-defined natural channel; that the stream rises in the southerly and easterly slopes of San Gorgonio Mountain and other mountains adjacent thereto in the San Bernardino Range and proceeds along its course and over the land particularly described in the complaint and within the district; that regularly during the rainy season each year, and also at other times, large quantities of water fall as rain or snow upon the slopes of said mountains within the watershed of

said stream and its tributaries and are carried thence down said stream without substantial loss to and below an underground dike existing across the channel of said stream near the northerly boundary line of section 2, township 3 south, range 3 east, S. B. B. & M.; that said dike causes all water flowing thereto in said stream, or percolating thereto through the soil beneath, and adjacent to said stream, to rise, at and where said dike exists, and for a short distance above said dike, to within fifteen feet of the surface of the ground and thereby forms a natural underground reservoir or basin above said dike, and from said reservoir said water flows over said dike to the lands below forming a surface and also a vast underground body of water; that below said dike in the Coachella plain are lands riparian to the stream, other lands to which rights to said water have attached by appropriation, other lands benefited by the waters of said stream by percolation and subirrigation, and other lands supplied with water from wells tapping this underground supply of water; that not less than 1400 inhabitants of said district residing in the towns and villages of Indio, Coachella, Thermal and Mecca, situated within said Coachella plain, require the use, and for more than ten years prior to the commencement of the action have regularly and continuously required and used, for municipal, domestic, manufacturing and other uses in said towns and villages, large quantities of water exceeding in amount 250,000 gallons per day; that the climate in said Coachella plain and throughout all that part of the remainder of said valley lying within the boundaries of said water district is arid and that the average annual rainfall therein is less than three inches, substantially all of which is quickly evaporated from the surface of the soil on which it falls; that the soil lying within said plain and within the district is fertile and with the application of water obtained from the subterranean supply readily responds with profitable crops of farm and garden products, and of cotton, grapes, dates and of citrus and other fruits; that more than 13,000 acres of land within said plain have been reclaimed from its wild and arid state by the owners thereof and their tenants and have been made productive and valuable by the use of said waters by means of irrigation, and that without sufficient water for irrigating the same said lands would be of little or no value; that the owners of said

cultivated lands have likewise used waters from said subterranean supply for irrigation for more than ten years, and that said source of water supply and the waters thereof in the quantities heretofore used are and will be necessary in order that said lands be productive; that any diminution in said underground water supply will cause great and irreparable injury and damage to each of the owners of land within said plain and to each of the inhabitants of said district.

It is further alleged that the defendant Stevens is and has been for more than twenty years the owner of lands above said dike, acquired by him or by his predecessors in interest from the United States government, and that no part of said lands is suitable for cultivation and that no part of the water of said stream is necessary for irrigating the same or any part thereof, and that the only beneficial use that has or can reasonably be made of the waters of said stream on said lands or by said defendant is for the domestic uses and purposes of the occupants thereof, and that for said purposes a constant flow of one-fiftieth of a cubic inch per second is reasonably sufficient; that within three months prior to the commencement of the action the defendant entered upon the lands at and above said dike and over said natural reservoir, and without the consent of the plaintiff or of any user of the waters of said stream below the lands of the defendant and against the protest of the plaintiff and of said users and the inhabitants of said district below said dike and natural reservoir, began to construct and will complete wells on the lands of the defendant and over and within said natural reservoir, and that the defendant intends thereby to pump or otherwise obtain all waters flowing in said stream or retained in said reservoir and to construct dams and other works and ditches for the diversion of said waters above said dam and by means of other works, ditches, pipe-lines and other conduits, to take, divert, appropriate and carry away from said stream and from said natural reservoir and from the lands below all of the waters so impounded by said reservoir to the amount of sixty cubic feet per second constant flow, or more, and by such means to spread and waste the waters so diverted upon other lands; that prior to the year 1922 the defendant Stevens and his predecessors in interest claimed and now claim the right to

divert certain waters of said river above said reservoir, and the defendant Stevens is now threatening to proceed approximately 17,000 feet up the bed of said stream from said original point of diversion and thereby take and remove said waters from the bed of the Whitewater River and change the natural course thereof and diminish the flow thereof to the said reservoir and the lands below. It is further alleged that none of the waters of said river, if taken and spread upon or otherwise used by the defendants on their lands, will return to said river or to the subterranean channels thereof running to the Coachella plain, and that by the threatened acts of the defendants all of the owners of land and users of water in said plain will be wrongfully deprived of the use of the waters of said river.

In the foregoing outline of the allegations of the complaint enough has been stated to show that the controversy is not one solely between an upper riparian owner and lower riparian owners and appropriators, as contended by the defendant, but is one affecting all of the users of the waters of said river below the natural reservoir, whether such users be land owners riparian to the river, or be appropriators under the laws of the state, or be owners and operators of wells constructed on the lands overlying the subterranean and percolating waters away from the river proper, or otherwise be users of the waters from the river for irrigation, domestic or other purposes.. In other words, under the allegations of the complaint this litigation affects the rights of every land owner and every inhabitant of the district using the waters of the river, including the subterranean flow thereof, and in these classes of persons are included all of the persons residing in or owning land in the Coachella plain. Under these circumstances the complaint sets forth an alleged grievance against the defendant which is and should be cognizable in a court of justice.

The defendant Stevens filed a demurrer to the complaint, under which it was claimed in the trial court and it is now insisted (1) that the plaintiff has not legal capacity to sue; (2) that the complaint does not state a cause of action, and (3) that there is a defect or misjoinder of parties plaintiff.

From what has been hereinbefore stated with reference to the allegations of the complaint, it is clear that sufficient has been set forth therein to constitute a cause of action.

The second ground of objection to the complaint is therefore found to be without merit. The defendant Stevens concedes that "there is no question that each individual riparian owner, or owner of land overlying the alleged subterranean water body, and each appropriator can bring an action in his individual name alone to protect his individual and several right," and it is not contended by him that the facts alleged in the complaint are insufficient to constitute a cause of action on behalf of each individual owner and user of water. Notwithstanding the foregoing concession of counsel for said defendant, the allegations of the complaint have been referred to somewhat at length for the purpose of disclosing the general situation of water users in the Coachella plain and the bearing which that general situation has upon the main point of said defendant that the plaintiff has not the legal capacity to sue. In this connection it is claimed that it is not shown that there are any lands or other property rights owned by the district which will be injured by the alleged threatened acts of the defendant and that, therefore, the defendant is not being sued by the real party or parties in interest. It must be conceded that there is an absence in the complaint of any allegation showing that title to any land or other property is held by the district as such, consequently the authority to maintain the action must appear in the act under which the district was organized, or under that act as supplemented by other statutes bearing on the subject. Otherwise it has no legal capacity to maintain the action.

That the district was organized in all respects as provided by the act of 1913 (Stats. 1913, p. 1049) following a favorable vote of the electors residing in the territory included within the district, is not questioned. The act is entitled: "An Act to provide for the incorporation and organization and management of county water districts, and to provide for the acquisition of water rights or construction thereby of waterworks and for the acquisition of all property necessary therefor, and also to provide for the distribution and sale of water by said districts."

Section 1 of the act provides that "A county water district may be organized and incorporated and managed as herein expressly provided and may exercise the powers herein expressly granted or necessarily implied." Section 12

enumerates the powers of the district. Subdivision 2 of that section provides that the district shall have power "to sue and be sued, except as otherwise provided herein or by law, in all actions and proceedings in all courts and tribunals of competent jurisdiction." Subdivision 6 of that section as originally enacted provided that the district should have power "to store water for the benefit of the district; and to conserve water for future use and to appropriate, acquire and preserve water and water rights and for this purpose to sue, intervene and compromise, in the name of the district, and assume the costs of litigation involving the ownership of waters or water rights within the district and those used and useful for the purposes of the district or of any of the lands situated therein." In 1923 said section 12 was amended (Stats. 1923, p. 312). By the amendment subdivision 6 was re-enacted in substantially the original form except that the following was added to the same subdivision relating to the powers of the district: "to commence, maintain, intervene in, defend and compromise actions and proceedings to prevent interference with or diminution of the natural flow of any stream or natural subterranean supply of waters used or useful for any purpose of the district or a common benefit to the lands within the district or its inhabitants; and to commence, maintain and defend actions and proceedings to prevent any such interference with the aforesaid waters as may endanger the inhabitants or lands of the district."

The present action was commenced on July 22, 1924. At that time the amendment of 1923 was in effect and it is not contended that the language of the amendment, taken alone, is in any way insufficient to authorize the district to commence and prosecute this action, and it may not well be so contended for it would be difficult to find words contemplating more precisely the action sought to be authorized in the name of the district or more direct in its application to the facts alleged in the present complaint.

But it is insisted that the original act and the amendment of 1923 are unconstitutional in so far as those enactments purport to authorize the district to prosecute such an action as the present one for the reason that the titles of the enactments did not specifically mention the subject of the grant of power to sue on behalf of the land owners and water

users in the district. The title of the original act has been quoted. The title of the amendatory statute was made to read: "An Act to amend sections twelve, fifteen, twenty-one and twenty-two of an Act entitled 'An Act [here the title of the original act is repeated]' approved June 10, 1913, as amended." Certain sections of the original act were amended in 1915 (Stats. 1915, p. 26), but in no respects affecting the questions involved herein. It is urged that there is no suggestion in the title that any subject other than the acquisition of water and water rights, and the distribution and sale of water so acquired is to be dealt with in the body of the act. The case of *In re Werner*, 129 Cal. 567 [62 Pac. 97], is relied upon as directly in point. That case involved the validity of a commitment for the alleged violation of an ordinance of the North Pasadena sewer district. The district was organized under an act of March 31, 1891 (Stats. 1891, p. 223), entitled: "An act to provide for the formation, government, operation and dissolution of sanitary districts in any part of the state, for the construction of sewers and other sanitary purposes, etc." In 1895 (Stats. 1895, p. 85), the title was amended by adding "and for empowering sanitary boards to provide in other respects for the good order and welfare of sanitary districts." Section 2 of the amendatory act amended section 5 of the act purporting to empower the board to determine the qualifications of persons authorized to sell liquors at retail and that no license to keep a saloon or sell liquors at retail should be operative unless approved by the sanitary board. Thereafter the board passed an ordinance making it unlawful for any person to keep a saloon or sell liquors at retail within the district without having procured a license therefor approved by the sanitary board. It was held that there was "nothing in the title of the act under consideration, even as attempted to be amended, which in the remotest degree refers to the question of regulating the sale of liquors or prescribing the qualifications of persons dealing in the same," and that a "sanitary district, no more than an irrigation district, or a reclamation district, or a drainage district, possesses police powers properly belonging to cities and municipal bodies exercising local governmental functions. Such districts are created for the purpose generally of some special local improvement, and should exercise only such powers as may be

conferred upon them by the legislature in the line of the object of their creation."

In the present case we think it indisputable that the power conferred on a county water district to sue and be sued with respect to the preservation and conservation of the sources of water supply used and usable for the lands and inhabitants within the district is directly in line with the objects of the creation of the district and germane to the purposes for which it was organized. The power to sue and be sued has been conferred upon numerous public corporations of this character and the conferring of such power without specific mention thereof in the title of the acts has not, so far as we have discovered, ever been successfully brought into question. For example, the original Wright Irrigation Act was enacted forty-two years ago and was entitled: "An Act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes." (Stats. 1887, p. 29.) In section 14 thereof the board of directors was authorized "to institute and maintain any and all actions and proceedings, suits at law and in equity, necessary or proper in order to fully carry out the provisions of this act, or to enforce, maintain, protect, or preserve any and all rights, privileges and immunities created by this act, or acquired in pursuance thereof. And in all courts, actions, suits, or proceedings, the said Board may sue, appear, and defend, in person or by attorneys, and in the name of such irrigation district." Superseding the original act came the Bridgeford Act in 1897 (Stats. 1897, p. 254) with a title no more comprehensive than the original act so far as the power to sue was concerned, and in section 15 thereof the provisions of section 14 of the Wright Act were re-enacted. Numerous other examples could be cited. It is sufficient to say that when the statute provides for the organization and government of such public corporations the power to sue and be sued need not be expressed in the title for the reason that such power is incidental to the general purposes of the act. (See *Islais Creek Reclamation Dist.* v. *All Persons*, 200 Cal. 277 [252 Pac. 1043]; *Robinson* v. *Kerrigan*, 151 Cal. 40, 50 [121 Am. St. Rep. 90, 12 Ann. Cas. 829, 90 Pac. 129].) It is but natural to assume that

when the creation of such a corporation is provided for and the general purpose is expressed in the title, the corporate body should possess the right to have recourse to the courts for the protection of its rights and the redress of wrongs committed in violation of those rights. We, therefore, conclude that the title of the original County Water District Act and the title of the amending act were fully sufficient to enable the legislature to incorporate in the body of such acts the provisions with reference to legal proceedings to preserve and protect the rights which in reality constitute one of the main reasons for the creation of the district.

Furthermore, we find no objection in providing in the body of the act without specific mention thereof in the title for the prosecution of proceedings to prevent interference with or diminution of the natural flow of any stream or subterranean water supply used or useful for any purpose of the district or a common benefit to the lands within the district or its inhabitants. One of the express purposes of the act is to conserve water for future use and to preserve water and water rights. The fact that the district as such does not assert title in itself to any of such rights is of no consequence, if it has the power to proceed in a representative capacity to protect the rights of all of the land owners and other users of water in the district. And this power the district unquestionably possesses not only under the clear provisions of the act but under well-recognized principles of equity jurisprudence. Conceding properly, as the defendant does, that an action would lie on behalf of each land owner in the district to protect his individual right, it would necessarily follow that under section 382 of the Code of Civil Procedure one might sue for the benefit of all. (See *Miller* v. *Bay Cities Water Co.*, 157 Cal. 256, 288 [27 L. R. A. (N. S.) 772, 107 Pac. 115].) It is true that section 367 of the same code provides that every action must be prosecuted in the name of the real party in interest but the same section excepts actions prosecuted as provided in section 369 of the Code of Civil Procedure. The last section referred to provides that a person *expressly authorized by statute* may sue without joining with him the persons for whose benefit the action is prosecuted. The County Water District Act expressly authorizes the present action and any final determination therein would necessarily bind the parties for

whose benefit it is prosecuted. Furthermore, no good reason has been suggested why, under the authority of the statute, the land owners and other water users in the district may not set up such a governmental agency to act in a representative capacity in their behalf. In our opinion they have done so and having done so they will necessarily be bound by the result of the litigation.

It is further contended by the respondent that by the terms of the Water District Act and the action of the district in prosecuting this cause, he is deprived of the equal protection of the law. Particularly the point is that as a land owner in the district he is subject to taxes or assessments levied by the district a portion of the revenue from which is devoted to the costs of prosecuting this action against him. It is argued that the respondent is thus required to assist in furnishing funds to maintain and prosecute an action against himself in which, it is claimed, no right of the district as such is involved. Assuming, as we have held, that the district has legal authority to prosecute the action, the further answer to the contention would seem to be that a land owner or taxpayer within such a public corporation should not be permitted to defeat or abate an action against himself for an alleged invasion of a right common to all of the land owners and water users in the district merely because costs of the litigation are borne from a fund made up of taxes including his own contribution thereto. To hold that a public corporation might not sue one of its taxpayers and pay the costs of the litigation out of tax moneys would be novel indeed. Reduced to the lowest terms such is the contention and its statement suggests its own answer.

From the nature of the problems presented on this appeal it is obvious that we are not dealing with the merits of the controversy, but only holding that the complaint states a cause of action and that the plaintiff has legal capacity to sue and that there is no defect in parties plaintiff. Sufficient has been said to dispose of the appeal without a discussion of other points argued by counsel.

The judgment is reversed,

Waste, C. J., Richards, J., Preston, J., and Seawell, J., concurred.

CURTIS, J., Dissenting.—I dissent from the foregoing opinion.

The act under which the appellant was organized (sec. 12, subd. 6), in so far as it purports to authorize the organization of a district with power "to commence, maintain, intervene in and compromise, in the name of the district, and to assume the costs of any action or proceeding involving or affecting the ownership or use of waters or water rights within the district, used or useful for any purpose of the district or a benefit to any land situated therein," is unconstitutional for the reason that the title of the act does not mention this grant of power. Subdivision 6 of section 12 of the act purporting to invest the district with this power was amended in 1923, and by said amendment it was sought to enlarge the powers of the district, given by the original act, to sue on behalf of the land owners and water users in the district. But in the amendatory act no mention or reference is made in its title to such power or to the enlarged powers which it was sought by said amendment to confer upon said district. The titles to both the original and amendatory acts are set forth in the majority opinion, and I submit that no one reading them would have any notice or intimation that a water district of the character, which the appellant claims to be, and with the broad and unusual powers with which the enactments attempt to invest said district, was contemplated or provided for in the enactments themselves.

Furthermore, from a reading of the act and the amendment thereto, as a whole, conceding the legislation to be constitutional, it seems clear that its only purpose was to enable persons residing within a compact territory, who were the owners of water rights used therein, and who desired to act in unison in protecting them, to form themselves into a district for such purpose, but it was not the intention of the act as originally passed or as subsequently amended to set up a legal entity with power to settle, compromise and litigate the several rights of said owners between themselves. This is what is being attempted in the present action. The lower owners are complaining of those residing in the upper part of the district, and owning land therein, that the latter are taking or attempting to take water belonging to the former. I agree with the views of Mr. Justice Plummer,

expressed by him in an opinion in this same action, when the same was before the district court of appeal, in which he said: "It certainly cannot be held that it was the intent of the legislature to create a legal entity which might play the part of a super-plaintiff or a super-defendant in settlement of mere private rights, or that such a super-plaintiff or super-defendant should exercise the prerogative of settling, compromising or adjusting mere private disputes. The different provisions of the subdivision of the section referred to must all go back and relate to the purposes for which water districts may be created, and when we go back to the title of the act and read therefrom the purpose or purposes, we find that it is for the acquisition of water rights, for the construction of water works, and for the distribution and sale of water by said districts, which includes, of course, the management of the machinery of the corporation. There is not a single intimation in the title that the legislature had in view the creation of a legal entity which might appear either as plaintiff or defendant in disputes over private water rights between private individuals, concerning water which might be used within the territorial limits of a water district in which the district, as a district, had neither ownership nor right of possession nor any legal right to the control thereof. If the contention of the appellant is correct, that the district is a legal entity authorized to appear in actions involving only private rights, the question is immediately presented, on which side should the district appear; should it appear as plaintiff or should it appear as defendant. If it has a right to advance the costs of such an action, should it finance the plaintiff's side of the case, or should it finance the defendant's? In any of these situations, if the district has a right to create itself a party, either as plaintiff or defendant, in the settlement of mere private rights, then the legislature has created a corporation with power within itself to determine the extent of the private rights of individuals in and to property in which the corporation known as the district has absolutely no ownership or pecuniary interest whatever."

Rehearing denied.

Curtis, J., dissented.