[Civ. No. 8246. Fourth Dist., Div. Two. Aug. 7, 1967.]

GLENBROOK DEVELOPMENT CO., Plaintiff and Respondent, v. CITY OF BREA, Defendant, Cross-complainant and Respondent; YORBA LINDA COUNTY WATER DISTRICT, Defendant, Cross-complainant and Appellant.

268

Rutan & Tucker, Fritz R. Stradling and James E. Erickson for Defendant, Cross-complainant and Appellant.

Burris & Lagerlof, H. Jess Senecal and H. Rodger Howell as Amici Curiae on behalf of Defendant, Cross-complainant and Appellant.

Martin E. Whelan, Jr., City Attorney, Bewley, Lassleben & Whelan and Bewley, Lassleben, Whelan & Miller for Defendant, Cross-complainant and Respondent.

Mark C. Allen, Jr., City Attorney (Inglewood), William Camil, City Attorney (Santa Fe Springs), Samuel Gorlick, City Attorney (Burbank), A. B. Keel, City Attorney (Hawthorne), Joseph W. Rainville, City Attorney (Glendale), Stanley E. Remelmeyer, City Attorney (Torrance), Wendell R. Thompson, City Attorney (Pasadena), John Sanford Todd, City Attorney (Pico Rivera), and Harry C. Williams, City Attorney (Azusa), as Amici Curiae on behalf of Defendant, Cross-complainant and Respondent.

No appearance for Plaintiff and Respondent.

KERRIGAN, J.—This action involves a dispute between a general law city and a county water district for the purpose of determining which entity has the right to serve domestic water to the residents of a subdivision. The subdivision is situated completely in the city limits and almost entirely within the territory of the district. The plaintiff Glenbrook Development Co., a California corporation, referred to herein as "subdivider," is the owner of said parcel which comprises approximately 16.5 acres of land identified as Tract 4547 in the City of Brea. At the time the action was initiated, there were 64 residential homes under construction on the subject parcel. Since 1961, the tract has been located within the city limits of the defendant-cross-defendant, cross-complainant and respondent City of Brea, which will be hereinafter designated as "city." The defendant, cross-complainant, cross-defendant and appellant Yorba Linda County Water District, referred to herein as "district," is a county water district organized and functioning pursuant to the provisions of divi-

sion 12 of the Water Code of the State of California, and since the year 1914, the land upon which 55 of the 64 homes are located has been within the boundaries of the district and serviced with water by the district or its predecessor-in-interest.

The district has outstanding a general obligation bonded indebtedness incurred for the purpose of providing the tracts within the district with water service, which constitutes a lien upon the land within the disctrict, so that the subdivider and its successors-in-interest, to wit, the home purchasers, will remain liable for the payment of taxes so as to provide reimbursement and satisfaction of the bonded indebtedness, regardless of whether the district provides water to the tract involved. Although the city owns and operates a municipal water system, the board of directors of the district has never given permission to the city to provide water service to the tract. The total number of registered voters residing within the tract is less than 200 families, and the voters of the district have never voted to permit service by the city.

On April 20, 1964, the city approved a final tract map for Tract 4547, subject to the following conditions: (a) that the subdivider construct and dedicate the water system within the tract to the city; (b) that the water system within the tract must be connected to the city water system; (c) that the subdivider take water service from the city.

These conditions were imposed pursuant to the city's subdivision ordinance (Brea Mun. Code, § 21.74), which states, in essence, that the domestic water supply of a subdivision within the city shall be obtained from the city water department.

The subdivider advised the city at all stages of the proceedings involving the processing of the tract map to the effect that the aforesaid conditions imposed by the city could be in derogation of the district's rights to provide service to the 55 residences which were located in the district's territorial jurisdiction. Nevertheless, the city insisted upon imposition of the stated conditions and the subdivider, caught in the crossfire between the city and the district, filed an action for declaratory relief for the purpose of determining which entity was to serve the tract, or any portion thereof, and sought an adjudication as to the validity of the conditions imposed by the city. The district and the city then filed cross-complaints

in the form of declaratory relief, each contending that it had the exclusive right to serve the subject tract.

The city, pursuant to stipulation of the parties, and without prejudice to any rights that either the city or district might enjoy, was authorized to serve domestic water to the tract pending a final disposition of the cause so that the subdivider would be in a position to complete the tract and assure potential buyers of an adequate supply of water pending this suit.

The trial court held that the city was not precluded from providing water service in district territory and that the ordinance requiring that the subdivider be furnished water only by the city was valid under the terms of the Subdivision Map Act, and entered judgment accordingly.

The issues to be determined on appeal may be defined as follows: (1) May a general law city provide water in the territory of a county water district under section 31053 of the Water Code where the district has incurred a general obligation bonded indebtedness for the purpose of providing such land with water service? (2) Is California Water Code, section 31053, unconstitutional as being violative of article XI, section 19, of the California Constitution? (3) In the event that Water Code, section 31053, does not apply to a general law city, does such a city have the power to impose a restriction to the effect that a subdivider obtain water only from the city under the Subdivision Map Act?

The trial court held that section 31053 of the California Water Code is not applicable to a general law city on the basis that a water system owned and operated by a general law city is not a "publicly owned utility" as that term is utilized in section 31053 of the Water Code.

Section 31053 of the Water Code of the State of California, which was enacted in the year 1959, provides as follows: "No *publicly owned utility* shall commence to provide any service for, on, or to any land within a county water district which is *subject to the lien of a general obligation bonded indebtedness* incurred by the district for the purpose of providing a service similar to that which the utility proposes to provide.

"However, a publicly owned utility may commence to provide service, otherwise prohibited, upon either of the following conditions:

"(a) If the board of directors of such a county water district shall by resolution permit such service; or

"(b) In any portion of such a county water district proposed to be served by the publicly owned utility in which the total number of registered voters residing therein exceeds 200, and in which at least two-thirds of the voters shall have voted at a special county water district election to permit such service. The election shall be called and held as an initiative measure pursuant to Section 30830." [Italics added.]

The parties correctly concede that a city water department is a "utility." A utility is an agency engaged in the business of supplying light, water, power, heat, transportation or means of communication; a "public utility" is a business or service which is engaged in regularly supplying the public with some commodity or service of public consequence, such as electricity, gas, water, transportation, telephone or telegraph service. (*Gulf States Utilities Co.* v. *State* (Tex.Civ.App. 1932) 46 S.W.2d 1018, 1021; see also *Del Mar Water etc. Co.* v. *Eshleman,* 167 Cal. 666, 672 [140 P. 591].) The interpretative question to be resolved is whether the utility is "publicly owned" under the provisions of section 31053 of the Water Code.

The general or popular meaning of the word "public" is: ". . . of or relating to business or community interests as opposed to private affairs," and the governmental meaning of the term is: ". . . in the service of the community or nation." (Webster's Third New International Dictionary.) A city water department has been judicially defined as a "public water system." (See *Hughes* v. *City of Lincoln,* 232 Cal. App.2d 741, 746 [43 Cal.Rptr. 306].) ▮ While there are no apparent case authorities precisely defining the phrase "publicly owned utility," the plain import of the term would indicate that it embraces governmental ownership. Publicly owned utilities are those owned by public corporations such as municipal public utility districts and public utility districts. (See 41 Cal.Jur.2d, Public Utilities, § 1, p. 248.)

Our interpretation of the word "public" finds support under both case and statutory law. "Public property" has been characterized as all of the property of a city and county, including pipe lines and storm drains. (*Bauer* v. *County of Ventura,* 45 Cal.2d 276, 287 [289 P.2d 1]; *Selby* v. *County of Sacramento,* 139 Cal.App.2d 94, 99 [294 P.2d 508].) Recent legislative enactments support the proposition that a city was intended to be included within the definition of a "publicly owned utility" and that its water system is, in fact, a utility

which is "publicly owned." (See Gov. Code, § 811.2.) In section 811.2 of the Government Code, a "public entity," is defined as including a city. Section 830 of the Government Code treats "property of a public entity" and "public property" as synonymous and defines them to mean property owned or controlled by the public entity. The legislative conception of what constitutes a "public utility" has been formulated in descriptive, rather than definitive terms. "'Public utility includes every common carrier, toll bridge corporation, pipeline corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation, water corporation, wharfinger, warehouseman, and heat corporation, where the service is performed for or the commodity delivered to the public or any portion thereof." (Pub. Util. Code, § 216, subd. (a).) Manifestly, a city water system is not a "private utility" inasmuch as it is in the service of the community. ▆ It would therefore appear that the trial court erred in concluding that a city water department is not a "publicly owned utility," by endeavoring to define it as a term with a special meaning instead of interpreting it in accordance with its plain import.

▆ The City of Brea next maintains that section 31053 of the Water Code cannot be constitutionally applied to a general law city because of the grant of powers conferred upon such entity by article XI, section 19, of the California Constitution, which provides: "Any municipal corporation may establish and operate public works for supplying its inhabitants with light, water, power, heat, transportation, telephone service or other means of communication. Such works may be acquired by original construction or by the purchase of existing works, including their franchises, or both. Persons or corporations may establish and operate works for supplying the inhabitants with such services upon such conditions and under such regulations as the municipality may prescribe under its organic law, on condition that the municipal government shall have the right to regulate the charges thereof. A municipal corporation may furnish such services to inhabitants outside its boundaries; provided, that it shall not furnish any service to the inhabitants of any other municipality owning or operating works supplying the same service to such inhabitants without the consent of such other municipality, expressed by ordinance."

Article XI, section 19, of the California Constitution is self-

executing, and therefore does not require enabling legislation. (*Sacramento etc. Dist.* v. *Pacific Gas & Elec. Co.,* 72 Cal.App. 2d 638, 653 [165 P.2d 741].)

Prior to the amendment of the section in October 1911, a general law city had no authority to construct or operate a water system. (*City of National City* v. *Fritz,* 33 Cal.2d 635, 637 [204 P.2d 7] ; *LaMesa Homes Co.* v. *LaMesa etc. Irr. Dist.,* 173 Cal. 121, 124 [159 P. 593] ; *Matter of Russell,* 163 Cal. 668, 672 [126 P. 875, Ann.Cas. 1914A 152], reversed on other grounds in 233 U.S. 195 [58 L.Ed. 912, 34 S.Ct. 517].) By virtue of the amendment of 1911, general law cities and quasi-municipal corporations were given the right to engage in the service of water to the inhabitants of their territories. (*Morrison* v. *Smith Bros., Inc.,* 211 Cal. 36 [293 P. 53].) ▉ However, service of water by a city is a proprietary function. (*In re Orosi Public Utility Dist.,* 196 Cal. 43, 57-58 [235 P. 1004] ; *City of Pasadena* v. *Railroad Com.,* 183 Cal. 526, 529 [192 P. 25, 10 A.L.R. 1425] ; *Marin Water etc. Co.* v. *Town of Sausalito,* 168 Cal. 587, 595 [143 P. 767], overruled on other grounds in *Los Angeles Met. Transit Authority* v. *Public Utilities Com.,* 59 Cal.2d 863, 869 [31 Cal.Rptr. 463, 382 P.2d 583] ; *South City of Pasadena* v. *Pasadena Land etc. Co.,* 152 Cal. 579, 593 [93 P. 490].) In supplying water to its inhabitants, a municipality acts in the same capacity as a private corporation engaged in a similar business, and not in its sovereign role. (*Nourse* v. *City of Los Angeles,* 25 Cal.App. 384, 385 [143 P. 801].) ▉ Consequently, the authority granted to a city under article XI, section 19, is a "privileged power"; a city is not obliged to furnish water to its inhabitants and has no duty of supplying water, although it may do so. (*People* ex rel. *City of Downey* v. *Downey County Water Dist.,* 202 Cal.App.2d 786, 792 [21 Cal.Rptr. 370].) Conversely, a county water district has a legal duty to carry out its primary purpose of furnishing water to its inhabitants. (*Coachella Valley County Water Dist.* v. *Stevens,* 206 Cal. 400, 406-407, 410-411 [274 P. 538] ; *Moore* v. *Twentynine Palms etc. Water Dist.,* 156 Cal.App.2d 109, 111 [318 P.2d 751].)

▉ While it is true that the power granted to a "municipal corporation" pursuant to the provisions of article XI, section 19, of the California Constitution is self-executing, so that it does not require enabling legislation to be effective, the nature of the power thus conferred by the Constitution is not

an exclusive power, is not given solely to cities, and does not preclude the enactment of legislation authorizing the formation of water districts for the purpose of serving water in city territory. (See *Henshaw* v. *Foster*, 176 Cal. 507, 508-509 [169 P. 82].) In 1917 the California Supreme Court ruled that the Municipal Water District Act of 1911 (Deerings Water Uncodified Acts 1962 [Part One] Act 5243) is constitutionally valid, and that article XI, section 19, does not constitute a prohibition against legislation authorizing the formation of water districts for the purpose of furnishing water in the territory of cities. (*Henshaw* v. *Foster, supra,* at p. 511.)

Following the rendition of this monumental decision, numerous cases have reaffirmed the existence and binding force of the act. (See *County of Marin* v. *Superior Court of Marin County,* 53 Cal.2d 633 [2 Cal.Rptr. 758, 349 P.2d 526]; *State of California* v. *Marin Municipal Water Dist.,* 17 Cal.2d 699 [111 P.2d 651]; *Morrison* v. *Smith Bros., Inc., supra,* 211 Cal. 36; *Haight* v. *Marin Municipal Water Dist.,* 208 Cal. 753 [284 P. 926]; *Jacobsen* v. *Superior Court,* 192 Cal. 319 [219 P. 986, 29 A.L.R. 1399]; *Marin Municipal Water Dist.* v. *Chenu,* 188 Cal. 734 [207 P. 251]; *City of San Diego* v. *Otay Municipal Water Dist.,* 200 Cal.App.2d 672 [19 Cal.Rptr. 595]; *Hidden Valley Municipal Water Dist.* v. *Calleguas Municipal Water Dist.,* 197 Cal.App.2d 411 [17 Cal.Rptr. 416]; *Wilson* v. *City of San Bernardino,* 186 Cal.App.2d 603 [9 Cal.Rptr. 431].)

The entities within the classification of a "municipal corporation," as that term is utilized in article XI, section 19, are not limited to cities. The section does not confer power solely upon a city, but rather upon a "municipal corporation." A municipal water district organized to supply water in a defined area, including both incorporated and unincorporated territory, and having the power of taxation, has been held to be a "municipal corporation" within the meaning of a statute conferring the right upon "municipal corporations" to construct and operate pipe lines along the public highways of the state as authorized by the Public Utilities Code. The term "municipal corporation," as used in article XI, section 19, of the Constitution, embraces entities other than cities and also includes a municipal utility district. (*Sacramento etc. Dist.* v. *Pacific Gas & Elec. Co., supra,* 72 Cal.App.2d 638, 653.) "Municipal corporation" is not restricted to municipal corporations *proper,* but includes *quasi-municipal* corpora-

tions under article XI, section 19, of the California Constitution. (*Morrison* v. *Smith Bros., Inc., supra,* 211 Cal. 36, 41; *In re Orosi Public Utility Dist., supra,* 196 Cal. 43.)

Following the adoption of the Municipal Water District Act in 1911, the County Water District Act of 1913 was enacted, and the latter act ''was closely patterned on the Water District Act of 1911, except that it applied to unincorporated territory.'' (*Morrison* v. *Smith Bros., Inc., supra,* 211 Cal. 36, 42.)

In summary, other entities, whether classified as municipal or quasi-municipal in nature, which have been judicially regarded as ''municipal corporations'' within the meaning of article XI, section 19, of the California Constitution, are cities (*City of Beaumont* v. *Beaumont Irr. Dist.,* 63 Cal.2d 291, 293 [46 Cal.Rptr. 465, 405 P.2d 377]; *In re Orosi Public Utility Dist., supra,* 196 Cal. 43, 55; *City of North Sacramento* v. *Citizens Utilities Co.,* 192 Cal.App.2d 482, 484-485 [13 Cal.Rptr. 538]), municipal utility districts (*Morrison* v. *Smith Bros., Inc., supra,* 211 Cal. 36, 41-42; *Sacramento, etc. Dist.* v. *Pacific Gas & Elec. Co., supra,* 72 Cal.App.2d 638, 653), and public utility districts (*In re Orosi Public Utility Dist., supra,* pp. 55-59). Conversely, irrigation districts, for example, are not municipal corporations or quasi-municipal corporations within the contemplation of the Constitution. (*In re Orosi Public Utility Dist., supra,* p. 53; *People* v. *Sacramento Drainage Dist.,* 155 Cal. 373, 382 [103 P. 207]; *Reclamation Dist. No. 551* v. *County of Sacramento,* 134 Cal. 477, 478 [66 P. 668].) Such districts are formed for the purpose of draining, reclaiming, or otherwise directly benefiting the lands affected thereby, and are more accurately characterized as political subdivisions of the state for a specific purpose rather than municipal corporations or quasi-municipal corporations. (*In re Orosi Public Utility Dist., supra,* pp. 52-53.)

 The only existing authority supporting the City of Brea's position to the effect that a county water district is not a municipal corporation within the meaning of the Constitution is *People* ex rel. *City of Downey* v. *Downey County Water Dist., supra,* 202 Cal.App.2d 786, 795, wherein the reviewing court utilized language indicating that a county water district ''is not a municipal corporation as that term is technically used in the law of this state.'' However, such language was mere dictum, and appears to be in conflict with the great weight of authority. In *Downey,* the court held that

when the territory of a county water district is annexed to and entirely contained within the boundaries of a city, the county water district automatically merged with the city and ceased to exist, pursuant to the doctrine of merger by operation of law.[1] While it is true that the functions performed by a county water district are more limited in nature than those performed by a municipal corporation in that a city has powers in the fields of fire and police protection, traffic control, zoning, health, recreation, regulation of business, and transportation (*People* ex rel. *City of Downey* v. *Downey County Water Dist., supra,* 202 Cal.App.2d 786, 795), there is substantial decisional law to the effect that a county water district has the mandatory duty of furnishing water to inhabitants within the district's boundaries, and where a district is supplying water, it does so pursuant to the authority granted it under the Constitution as well as legislative fiat. (*Coachella Valley County Water Dist.* v. *Stevens, supra,* 206 Cal. 400, 406-407.) It inevitably follows, therefore, that a county water district must be regarded as a "municipal corporation" within the meaning of article XI, section 19, of the California Constitution inasmuch as its functions are practically identical in nature and purpose with those exercised by a municipal water district, and inasmuch as both types of districts were created for the primary purpose of supplying water to parcels of land situated within their respective boundaries.

 Therefore, by virtue of the express provisions contained in section 31053 of the Water Code of the State of California, no publicly owned utility, including the City of Brea, may provide water service within the territorial jurisdiction of a county water district where the district has previously incurred a general obligation bonded indebtedness, unless the city complies with the conditions prescribed by the aforesaid section.

 In summation, we conclude that (1) the city water department of the City of Brea is a "publicly owned utility" as that term is employed in section 31053 of the Water Code of the State of California; and (2) section 31053 of the Water Code is constitutionally valid and is not violative of article XI, section 19, of the California Constitu-

---

[1] In 1965 section 56400 of the Government Code was enacted whereby the doctrine of automatic merger was expressly abolished.

tion. ■ Consequently, the conditions imposed by the respondent city requiring the subdivider to obtain water service from the city for the lots located within the territory of the water district are invalid inasmuch as the land within the district is subject to the lien of a general obligation bonded indebtedness.

In view of the foregoing decision, it is unnecessary to determine whether the subdivision ordinance of the City of Brea represents a proper exercise of the powers granted under the Subdivision Map Act of the State of California. (Bus. & Prof. Code, 11500 et seq.; Brea Subd. Ord., § 12.07; Brea Mun. Code, § 21.74.)

The judgment is reversed.

McCabe, P. J., and Tamura, J., concurred.

A petition for a rehearing was denied August 30, 1967. The petition of respondent City for a hearing by the Supreme Court was denied October 5, 1967, with the statement, ''We do not understand the opinion of the Court of Appeal to have decided that the issue of similarity should not be tried.'' Tobriner, J., and Burke, J., were of the opinion that the petition should be granted.