545 F.2d 1157
 13 Fair Empl.Prac.Cas. 845,
13 Empl. Prac. Dec. P 11,328
Tejpal S. SETHY, Appellee,
v.
ALAMEDA CO. WATER DISTRICT, Appellant (three cases).
Tejpal S. SETHY, Appellant,
v.
ALAMEDA CO. WATER DISTRICT et al., Appellees (two cases).
 Nos. 73-1852, 73-2734, 73-2802, 73-3333 and 73-3334.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 20, 1976.
Rehearing Denied Oct. 26, 1976.
 
 William C. Wunsch (argued), of Faulkner, Sheehan & Wunsch, Jay R. Mayhall (argued), San Francisco, Cal., for Alameda County Water Dist.
 Russel W. Galloway, Jr. (argued), of Legal Aid Society of Alameda County, Oakland, Cal., for Tejpal S. Sethy.
 Before CHAMBERS, BROWNING, KOELSCH, DUNIWAY, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE, SNEED and KENNEDY, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 The Alameda County Water District, asserting a defense of governmental immunity, appeals a judgment for damages for Tejpal Sethy and an order of re-employment in an action based upon racial discrimination. Sethy cross-appeals from a companion judgment for the individual defendants.
 
 
 2
 Sethy, a brown-skinned person of East Indian descent, was hired in 1963 as an engineering technician by the Alameda County Water District. He alleged that he was thereafter subjected to racially prejudicial treatment which culminated in his discharge in October 1970.
 
 
 3
 Sethy unsuccessfully pursued state remedies under the California Fair Employment Practices Law.[1] He then brought this action for damages under 28 U.S.C. § 1343, naming as defendants the Water District and three of its individual employees.
 
 
 4
 The district court submitted to the jury Sethy's damages claim against the municipal corporation under 42 U.S.C. § 1981.[2] A companion § 1983 claim was submitted against the individual defendants only. As noted, the jury found the individuals not liable. After the verdicts, motions on both sides preserved a number of issues which are now before us in these consolidated appeals.
 
 I. THE WATER DISTRICT'S APPEAL
 
 5
 (a) Municipal Immunity
 
 
 6
 The Water District contends that municipal immunity, established for actions brought under 42 U.S.C. § 1983 by Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), should be extended to cover Sethy's § 1981 claim. We have never squarely decided the question, but one of our cases appears to have applied Monroe v. Pape to a § 1981 claim against a city. Arunga v. Weldon, 469 F.2d 675 (9th Cir. 1972), combined a class action and a demand for a three-judge court to declare unconstitutional Art. XI, § 11, California Constitution, with damages claims against a city under § 1981 and against individual police officers under § 1983. The pro se complaint was dismissed under Fed.R.Civ.P. 12(b). The pro se brief on appeal did not present intelligible issues, and this court did not reach the merits of any proposal, as none was put forward, to distinguish between sections 1981 and 1983. Accordingly, we do not view Arunga v. Weldon as controlling precedent on the § 1981 issues presented here.[3] See United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 37-38, 73 S.Ct. 67, 97 L.Ed. 54 (1952) (prior decision is not binding precedent on point not raised in briefs or argument nor discussed in the opinion of the Court in that case); see also Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); accord, Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).
 
 
 7
 Section 1983 was part of the Civil Rights Act of April 20, 1871, ch. 22, § 1, 17 Stat. 13. In Monroe v. Pape, supra, the Supreme Court reviewed the legislative history of § 1983, and determined that Congress had specifically decided not to make municipalities liable for damages under that act. Monroe v. Pape was based solely on legislative intent, and immunity was confined to § 1983. 365 U.S. at 191, 81 S.Ct. 473. Nothing was said about § 1981.
 
 
 8
 Section 1981 was first enacted five years earlier than § 1983, as part of section 1 of the Civil Rights Act of April 9, 1866, ch. 31, 14 Stat. 27.[4] Its purpose was to implement the Thirteenth Amendment. The Thirteenth Amendment is not a mere prohibition of discriminatory state laws, but an affirmative declaration that all vestiges of slavery would be illegal. District of Columbia v. Carter, 409 U.S. 418, 421-22, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). The Thirteenth Amendment gave Congress the power to pass enforcing legislation with nationwide application. The Civil Rights Act of 1866 was the first major piece of that legislation. 409 U.S. at 421-22, 93 S.Ct. 602. Reenacted in 1870 as 16 Stat. 144, the present § 1981 "affords a federal remedy against discrimination in private employment on the basis of race. An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages. * * * " Johnson v. Railway Express Agency, 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). District of Columbia v. Carter points out several important differences between § 1981 and § 1983. We hold that the water district's claim of categorical immunity, based upon § 1983 and Monroe v. Pape, cannot be sustained.[5]
 
 
 9
 (b) Implied Repeal
 
 
 10
 If it is not entitled to categorical immunity under Monroe v. Pape, and we have held it is not, the Water District falls back to its next line of defense: If Congress ever intended to make municipal corporations liable under § 1981, that intent was repealed by implication. A brief look at legislative history will place in focus the Water District's contention and the answer to it.
 
 
 11
 In 1866, most of the states adhered in some manner to the concept of sovereign immunity. With the growth of state business, the immunity of the state had often been carried over to actions against state agencies. See generally W. Prosser, Law of Torts 971 et seq. (4th ed., 1971). However, under the common law of most states in 1866, municipal corporations did not share the state's sovereign immunity.[6] When acting in a "proprietary" capacity, at least, municipalities were still liable in the same manner as private entities.
 
 
 12
 Section 1 of the 1866 Act imposed federal liability upon private entities.[7] The statute clearly is not limited to actions against "persons". But the Water District argues that even if § 1981 could have been construed during the first four years of its existence as an act creating rights enforceable against municipalities, that construction was repealed by implication when Congress failed in 1871 to adopt the Sherman Amendment to what is now § 1983.[8]
 
 
 13
 The colorful history of the Sherman Amendment discloses no such intent. See Moor v. County of Alameda, 411 U.S. 693, 707-710, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). There is no basis for reading an implied repeal of any rights created by § 1981 into the failure of Congress in 1871 to force municipal liability under § 1983 upon states that did not at that time permit actions against municipalities.[9]
 
 
 14
 There is likewise no "positive repugnancy" between the Act of 1866 and the Act of 1871 that would force a conclusion that passage of the latter impliedly repealed the former. See United States v. Borden Co., 308 U.S. 188, 198-99, 60 S.Ct. 182, 84 L.Ed. 181 (1939). Not only do the two laws fail to create a total subject-matter overlap, but the rejection of municipal liability in the Act of 1871 is not inconsistent with its imposition under the Civil Rights Act of 1866.
 
 
 15
 A proper reading of § 1981 today, in light of Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 239, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), implies the existence of all necessary and appropriate remedies, including the remedy of damages against a municipal corporation in the case of the kind presently before us.
 
 
 16
 (c) California "Public Entity" Claims Act
 
 
 17
 The Water District has argued that to permit one claiming racial discrimination to maintain an action under § 1981 gives favored treatment to a racially classified plaintiff, inasmuch as all other actions against public entities[10] for damages for "injuries" are governed by California's claims act.[11]
 
 
 18
 We have carefully considered the Water District's scholarly argument. It would have us engraft California's claims procedure upon this type of civil-rights action. But with all respect to the research that has gone into the problem, we hold that a plaintiff seeking in federal court to vindicate a federally created right cannot be made to jump through the procedural hoops for tort-type cases that may have commended themselves to the legislative assemblies of the several states. Cf. Donovan v. Reinbold, 433 F.2d 738, 741-42 (9th Cir. 1970).
 
 
 19
 II. EFFECT OF VERDICT FOR INDIVIDUAL DEFENDANTS
 
 
 20
 Several other alleged errors have been assigned by the Water District.
 
 
 21
 The District urges that the verdict which found the named individual defendants not liable necessarily exonerates the Water District because corporate liability could be derivative only and could not exist without a finding of discriminatory acts by named employees.
 
 
 22
 The point would deserve consideration if the named defendants had been the only Water District employees shown by the evidence to have subjected Sethy to racial discrimination on the job. That was not the case below. The plaintiff produced evidence of discriminatory conduct by persons other than the named defendants (as well as by the named defendants). There was an adequate foundation in the evidence to support corporate liability even though the named individuals were found to be free from liability.
 
 III. EVIDENCE
 
 23
 The Water District has also assigned error to the admission into evidence of a self-serving diary in which Sethy recorded various episodes of alleged racial indignity and his impressions and reactions thereto. During the plaintiff's case, the Water District cross-examined Sethy on twenty-eight separate entries in the diary. In response to this cross-examination, Sethy offered the whole document in evidence. The court received the exhibit over a valid objection that the contents were largely prejudicial hearsay. Ordinarily, a cross-examiner opens up the relevant hearsay in such a memorandum, but not necessarily the whole exhibit. Here, it was error to receive the irrelevant matter, but we are satisfied that the exhibit did not sufficiently prejudice the defendants to warrant a new trial on that ground alone.
 
 
 24
 The Water District also complains of the trial court's admission of testimony about the racial make-up of Alameda County and about the percentage of nonwhites on the Water District's payroll. It asserts that, since the boundaries of the Water District are not congruent with those of the county, the statistics were irrelevant and immaterial and that the testimony regarding the percentage of nonwhites on the payroll was irrelevant to Sethy's claim. While most of the challenged statistical evidence was only remotely relevant, and could have been dispensed with, there was no harm in using it to rebut the Water District's insistence that it had never discriminated. Past discrimination, at least for the purposes of shifting the burden of going forward, can be proved by statistical evidence of the kind employed here. See United States v. Ironworkers Local 86, 443 F.2d 544 (9th Cir. 1971). The questionable value of comparing county-wide population figures with a subdistrict's racial mix goes to the weight of the evidence, not necessarily to its admissibility.
 
 IV. EQUITABLE RELIEF
 
 25
 Finally, the Water District asserts that the trial court should not have allowed the equitable remedy of reinstatement in addition to the jury's award of general damages which presumably included loss of future earnings. Where a statute like Title VII applies, there is no inconsistency in awarding both damages and reinstatement. Indeed, under statutory schemes, when reinstatement is not ordered in an employment discrimination case, the circumstances are scrutinized very carefully. See Burton v. Cascade School District, 512 F.2d 850 (9th Cir.), cert. denied, 423 U.S. 839, 96 S.Ct. 69, 46 L.Ed.2d 59 (1975). Here Sethy's discharge predated Title VII by more than a year. But Sethy was proceeding under § 1981, which, as we have already seen, has been liberally construed to effectuate the purpose of the Thirteenth Amendment. It was contemplated that the statute would call upon the federal courts to use all remedies at their disposal, including injunctive relief, to make whole the victims of racial discrimination. The district court, in the exercise of its judicial discretion, and aware of the costs and delays as well as the uncertainty of litigation, might well have felt that both damages and reinstatement were necessary to make this plaintiff whole. We find no reversible error in the exercise of that discretion.
 
 V. SETHY'S CROSS APPEAL
 
 26
 Sethy has cross-appealed from various rulings by the trial court which, he contends, caused the jury to bring in an erroneous verdict exonerating the individual defendants of liability for damages. Because we affirm the judgment against the water district, and because Sethy has conceded that he will be satisfied if that judgment is affirmed, we need not consider the various points that were briefed and argued for and against Sethy's asserted right to another trial against the individuals.
 
 
 27
 Affirmed.
 
 SNEED, Circuit Judge (concurring):
 
 28
 I concur in the decision to reject the argument that municipal immunity exists with respect to actions to recover damages with respect to a cause of action based on racial discrimination in employment pursuant to 42 U.S.C. § 1981.
 
 
 29
 I do this, however, unconvinced that Congress intended by its enactment of the 1866 Civil Rights Act to impose such liability. Like Mr. Justice Stevens, I believe section 1 of the Civil Rights Act of 1866 was "intended only to guarantee all citizens the same legal capacity to make and enforce contracts, to obtain, own and convey property, and to litigate and give evidence." Runyon v. McCrary, 427 U.S. 160, 96 S.Ct. 2586, 2603, 49 L.Ed.2d 415 (1976) (Stevens, J., concurring). Moreover, I continue to find incomprehensible the assertion that Congress, which in the Civil Rights Act of 1871 refused to accept an amendment which would have made local governments liable to suit thereunder, intended in 1866 to impose on municipalities liability for damages for violations of the Civil Rights Act of that year.[1]
 
 
 30
 These views, however, are no longer proper. The Supreme Court has made clear that section 1 of the Civil Rights Act of 1866 does more than assure that all citizens enjoy the same legal capacity. See Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); Tillman v. Wheaton-Haven Recreation Assn., 410 U.S. 431, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973); Johnson v. Railway Express Agency, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); Runyon v. McCrary, 427 U.S. 160, 189, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (Stevens, J., concurring). Specifically, the court has recognized that 42 U.S.C. § 1981 permits a suit against a private employer for discrimination in employment, Johnson v. Railway Express Agency, supra, and that damages are a proper remedy for impairment of rights protected by 42 U.S.C. § 1982. See Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969). In view of these actions, and the Court's view that 42 U.S.C. § 1981 implements both the Thirteenth and Fourteenth Amendments,[2] only the obtuse or clairvoyant would contend that the Supreme Court would hold, when specifically confronted with the issue, that 42 U.S.C. § 1981 recognizes municipal immunity. I cannot bring myself to accept the first characterization and the second exceeds my pretensions.
 
 
 31
 I, therefore, concur.
 
 
 32
 EUGENE A. WRIGHT, TRASK and WALLACE, Circuit Judges, join in this opinion.
 
 
 
 [1]
 Cal. Labor Code § 1410 et seq. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., did not become applicable to municipalities until March 24, 1972, a year and a half after Sethy's employment had been terminated
 
 
 [2]
 42 U.S.C. § 1981. Equal rights under the law:
 "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (R.S. § 1977.)"
 
 
 [3]
 This case was taken en banc for the purpose of considering the effect to be given Arunga v. Weldon, 469 F.2d 675 (9th Cir. 1972). To the extent that this opinion is inconsistent with Arunga, this opinion is the preferred view of the majority of this court
 
 
 [4]
 Although § 1 of the Civil Rights Act of 1866 was re-enacted under the Fourteenth Amendment in 1870, Congress did not mean this re-enactment to change the goals or interpretations of the provisions. Section 1 was included in the Enforcement Act of 1870, along with other sections of the 1866 Act, to provide some machinery for putting the new bill in motion. Cong. Globe, 41st Cong., 2d Sess. 3560 (Sen. Stewart); cf. Jones v. Alfred Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); Young v. Int'l Tel. & Tel. Co., 438 F.2d 757, 759 (3d Cir. 1971)
 
 
 [5]
 City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), is no bar to an action against a municipality under 42 U.S.C. § 1981. In Kenosha, the Court viewed municipal status as imposing a jurisdictional barrier because a municipality is not a "person" within the meaning of § 1983. The provisions of § 1981, however, are not limited to "persons"; on the contrary, that term refers to those benefited by the enactment. There is no indication that Congress intended to restrict the class of those liable for § 1981 violations to those within the § 1983 definition of "persons"
 
 
 [6]
 Barnett, The Foundations of the Distinction Between Public and Private Functions in Respect to the Common-law Tort Liability of Municipal Corporations, 16 Or.L.Rev. 250 (1936-37)
 
 
 [7]
 Runyon v. McCrary, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (June 25, 1976). It is also clear that the protections were meant to cover employment. See, e. g., Young v. Int'l Tel. & Tel. Co., 438 F.2d 757, 760 (3d Cir. 1971); and see Cong. Globe, 39th Cong., 1st Sess. 1124 (Rep. Cook); Cong. Globe, 39th Cong., 1st Sess. 1151 (Rep. Eldridge); Cong. Globe, 39th Cong., 1st Sess. 1159 (Rep. Thornton)
 
 
 [8]
 The Sherman Amendment specifically would have made municipalities, among other entities, liable for certain injuries occurring within their boundaries. After involved debate, and numerous votes, the amendment was accepted by the Senate, and rejected by the House. See Monroe v. Pape, 365 U.S. 167, 188, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)
 
 
 [9]
 In Bennett v. Gravelle, 323 F.Supp. 203 (D.Md.), aff'd, 451 F.2d 1011 (4th Cir. 1971), cert. dismissed, 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692 (1972), a case cited by the Water District to support immunity, the court limited federal relief to a situation where state law allowed the type of action being pursued under § 1981. 323 F.Supp. at 216. Bennett also gives the plaintiff support, but we disagree with the Bennett court insofar as it believed that allowing municipal liability under § 1981 "deprives section 1983 of its essential significance." 323 F.Supp. at 215. The Bennett court held that § 1983's "essential significance" lay in being the first statute to provide a federal remedy for deprivation of civil rights. 323 F.Supp. at 215. We see § 1983 as the first statute to provide a federal cause of action for the redress of all types of discrimination carried out by any type of official act, including violence
 
 
 [10]
 Appellant Alameda County Water District is organized under the Cal.Water Code § 30,000 et seq. Although the official nature of such entities has fluctuated over the years (compare Laguna Beach County Water Dist. v. Orange County, 30 Cal.App.2d 740, 87 P.2d 46 (1939), overruled in Rock Creek Water Dist. v. Calaveras County, 29 Cal.2d 7, 172 P.2d 863 (1946), with Glenbrook Development Co. v. City of Brea, 253 Cal.App.2d 267, 61 Cal.Rptr. 189 (4th Dist., 1967)), California law now holds a § 30,000 water district to be a "municipal corporation" within the meaning of the California Constitution. Glenbrook Development Co. v. City of Brea, 253 Cal.App.2d at 276-277, 61 Cal.Rptr. at 195
 
 
 [11]
 In its Comment to Cal.Govt. Code § 815 (West), the Senate Legislative Committee said:
 "This section abolishes all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, e. g., inverse condemnation. In the absence of a constitutional requirement, public entities may be held liable only if a statute * * * is found declaring them to be liable. Because of the limitations contained in Section 814, which declares that this part does not affect liability arising out of contract or the right to obtain specific relief against public entities * * *, the practical effect of this section is to eliminate any common law governmental liability for damages arising out of torts. The use of the word 'tort' has been avoided, however, to prevent the imposition of liability by the courts by reclassifying the act causing the injury."
 
 
 [1]
 Perhaps the most relevant passage in Congressional debates bearing on the intent of Congress in 1866 regarding municipal liability is the following exchange involving Representative Wilson who undoubtedly had a thorough understanding of the statute because he was chairman of the committee which reported the statute to the House
 MR. LOAN: Mr. Speaker, I desire to ask the chairman who reported this bill, why the committee limit the provisions of the second section to those who act under the color of law. Why not let them apply to the whole community where the acts are committed? (Emphasis added.)
 MR. WILSON: That grows out of the fact that there is discrimination in reference to civil rights under the local laws of the States. Therefore we provide that the persons who under the color of these local laws should do these things shall be liable to this punishment.
 MR. LOAN: What penalty is imposed upon other than officers who inflict these wrongs on the citizen? (Emphasis added.)
 MR. WILSON: We are not making a general criminal code for the States.
 MR. LOAN: Why not abrogate those laws instead of inflicting penalties upon officers who execute writs under them?
 MR. WILSON: A law without a sanction is of very little force.
 MR. LOAN: Then why not put it in the bill directly?
 MR. WILSON: That is what we are trying to do.
 Cong. Globe, 39th Cong., 1st Sess. 1120, as reproduced in The Reconstruction Amendment Debates, published by the Virginia Commission on Constitutional Government, 1967.
 Clearly this passage speaks to several issues. It is consistent, however, with the intention not to create municipal liability.
 
 
 [2]
 See Runyon v. McCrary, supra 427 U.S. 160 at 198, 96 S.Ct. 2586, 2608 n. 8 (White, J., dissenting)