[No. C058178. Third Dist. Dec. 9, 2009.]

GOLDEN DRUGS CO., INC., Plaintiff and Appellant, v.
DAVID MAXWELL-JOLLY, as Director, etc., Defendant and Respondent.

COUNSEL

The Altman Group and Bryan C. Altman for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Julie Weng-Gutierrez and Michael V. Hammang, Deputy Attorneys General, for Defendant and Respondent.

OPINION

SIMS, J.—Golden Drugs Co., Inc., doing business as Golden Drugs Pharmacy (Pharmacy), appeals from a judgment denying its petition for a writ of mandamus (Code Civ. Proc., § 1085), which challenged the termination of Pharmacy's Medi-Cal provisional provider license by defendant Sandra Shewry, as then director of the State Department of Health Care Services (the Department). (Health & Saf. Code, § 20 [name change from Department of Health Services]; Welf. & Inst. Code, § 14043.65.[1]) Pharmacy

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

Section 14043.65, subdivision (a), provides: "Notwithstanding any other provision of law, . . . any provider . . . whose provisional provider status . . . has been terminated pursuant to this article . . . may appeal this action by submitting a written appeal, including any supporting evidence, to the director or the director's designee. . . . The appeal procedure shall not include a formal administrative hearing under the Administrative Procedure Act and shall not result in reactivation of any deactivated provider numbers during appeal. A[] . . .

disputes that it allowed a pharmacy technician to dispense medication without direct supervision and control of a pharmacist. Pharmacy contends (1) this court should consider extra-record evidence; (2) the evidence is insufficient to support the judgment; and (3) the Department's actions were arbitrary and capricious and denied due process. We shall affirm the judgment.

## STATUTORY AND REGULATORY FRAMEWORK

The Department administers the Medi-Cal program, by which California participates in the federal Medicaid program (42 U.S.C. § 1396 et seq.) to provide medical services to eligible persons. (§§ 10720 et seq., 14000 et seq.; Cal. Code Regs., tit. 22, § 51000 et seq.; *Marvin Lieblein, Inc. v. Shewry* (2006) 137 Cal.App.4th 700, 707 [40 Cal.Rptr.3d 547].)

■ To obtain reimbursement for services provided through Medi-Cal, a medical professional must enroll as a Medi-Cal "provider," i.e., an entity that "provides services, goods, supplies, or merchandise" to Medi-Cal beneficiaries. (§ 14043.1, subd. (e).) In order to be a Medi-Cal provider, the medical professional must comply with Medi-Cal statutes and regulations, as well as statutes and regulations governing the provider's profession. (§§ 14043.1, 14043.27.[2])

■ The practice of pharmacy is a profession subject to the Pharmacy Law (Bus. & Prof. Code, §§ 4000–4426, 4050). Pharmacies must be licensed by the California State Board of Pharmacy (the Board), which has as its "highest priority" the "[p]rotection of the public." (Bus. & Prof. Code, § 4001.1; see *id.*, § 4110.) Every pharmacy must have a "pharmacist-in-charge" who is licensed by the Board and "responsible for a pharmacy's

provider . . . that files an appeal pursuant to this section shall submit the written appeal along with all pertinent documents and all other relevant evidence to the director or to the director's designee within 60 days of the date of notification of the department's action. The director or the director's designee shall review all of the relevant materials submitted and shall issue a decision within 90 days of the receipt of the appeal. The decision may provide that the action taken should be upheld, continued, or reversed, in whole or in part. The decision of the director or the director's designee shall be final. Any further appeal shall be required to be filed in accordance with Section 1085 of the Code of Civil Procedure."

[2] Section 14043.27 provides in part: "(c) The following circumstances are grounds for termination of provisional provider status . . . . [¶] . . . [¶] (3) The provider has provided material information that was false or misleading at the time it was provided. [¶] . . . [¶] (9) The provider commits any violation of a federal or state statute or regulation governing the Medi-Cal program or of a *statute or regulation governing the provider's profession* or occupation and the violation represents a threat of immediate jeopardy or significant harm to any Medi-Cal beneficiary or to the public welfare." (Italics added.)

compliance with all state and federal laws and regulations pertaining to the practice of pharmacy." (Bus. & Prof. Code, § 4113, subd. (b); see *id.*, § 4036.) A pharmacist may be assisted by a "pharmacy technician," who must be licensed as such and is "an individual who assists a pharmacist in a pharmacy in the performance of his or her pharmacy related duties, as specified in Section 4115." (Bus. & Prof. Code, §§ 4115, subd. (e), 4038, subd. (a).)

Business and Professions Code section 4115 states in part:

"(a) A pharmacy technician may perform packaging, manipulative, repetitive, or other nondiscretionary tasks, only while assisting, and while under the direct supervision and control of a pharmacist.

"(b) This section does not authorize the performance of any tasks specified in subdivision (a) by a pharmacy technician without a pharmacist on duty.

"(c) This section does not authorize a pharmacy technician to perform any act requiring the exercise of professional judgment by a pharmacist.

"(d) The board shall adopt regulations to specify tasks pursuant to subdivision (a) that a pharmacy technician may perform under the supervision of a pharmacist."

The Board adopted a regulation (Cal. Code Regs., tit. 16, § 1793.2 (regulation 1793.2)), stating, " 'Nondiscretionary tasks' as used in Business and Professions Code section 4115, include: [¶] (a) removing the drug or drugs from stock; [¶] (b) counting, pouring, or mixing pharmaceuticals; [¶] (c) placing the product into a container; [¶] (d) affixing the label or labels to the container; [and] [¶] (e) packaging and repackaging." Another regulation states that "[o]nly a pharmacist" (or an intern pharmacist acting under the pharmacist's supervision) may interpret a prescription; "[s]upervise the packaging of drugs and check the packaging procedure and product upon completion"; and "[p]erform all functions which require professional judgment." (Cal. Code Regs., tit. 16, § 1793.1 (regulation 1793.1).)

## FACTUAL AND PROCEDURAL BACKGROUND

On February 3, 2006, the Department sent a letter to Pharmacy, located in Los Angeles, stating the Department was terminating Pharmacy's Medi-Cal provisional provider status, effective on February 21, 2006, in accordance

with section 14043.27 (see fn. 2, *ante*), because during a field audit, an auditor and consultant "directly observed the pharmacy technician dispensing medication intended for delivery to clients without direct supervision and control of a pharmacist. This violates California Business and Professions Code [section] 411 [*sic*: 4115] (a) and (f), which states in part: [¶] '. . . a pharmacy technician may perform packaging, manipulative, repetitive, or other nondiscretionary tasks, only while assisting, and while under the direct supervision and control of a pharmacist. . . . [T]he pharmacy technician shall be within the pharmacist's view . . . ."[3]

On February 16, 2006, the Department sent Pharmacy an amended letter correcting the Medi-Cal provider number.

On February 22, 2006, Pharmacy's attorney responded that there must be some mistake and requested an informal meeting to "obviate the expenditure of resources" on an administrative appeal.

As alleged in Pharmacy's writ petition, Pharmacy's attorney and its pharmacist-in-charge (PIC) Luther Jenkins met in Sacramento on March 22, 2006, with Jan Inglish, chief of the Department's medical review branch, audits and investigations section, and members of her staff. Jenkins allegedly provided documents and live "testimony" contradicting the Department's facts, and Inglish allegedly asked inappropriate questions about the ethnic makeup of the community where Pharmacy was located; the national origin of Pharmacy's owners; and the relative salaries of the owners and pharmacist.

On May 25, 2006, the Department sent an "Amendment to Letter Dated February 16, 2006" to Luther Jenkins, president, chief executive officer and PIC of Golden Drugs Co., Inc. The letter stated the Department "is terminating your Medi-Cal provisional provider status, suspending you from enrollment and participation in the Medi-Cal program, and deactivating your provider number . . . [effective] June 14, 2006, in accordance with . . . [section] 14043.27 [fn. 2, *ante*]."

In addition to the facts asserted in the prior termination letter, the May 2006 letter said that it conducted an onsite review on November 28, 2005, which revealed (1) Pharmacy changed ownership in May 2003; (2) after the

---

[3] It appears the letter quoted a prior version of the statute. (Stats. 2004, ch. 695, § 35.) The wording that the technician be "within the pharmacist's view" does not appear in the current version of Business and Professions Code section 4115, enacted in 2005 (Stats. 2005, ch. 621, § 53), which provides: "(a) A pharmacy technician may perform packaging, manipulative, repetitive, or other nondiscretionary tasks, only while assisting, and while under the direct supervision and control of a pharmacist." Pharmacy does not raise any issue concerning the amendment.

change in ownership, Pharmacy's monthly Medi-Cal payments increased from a monthly average of $82,240, to a monthly average of $280,109; (3) Jenkins, the majority owner and PIC, earned less than the two minority owners; (4) Pharmacy's daily dispensing report showed it dispensed 282 prescriptions or 35 prescriptions per hour on November 28, 2005, 364 prescriptions or 43 per hour on November 30, 2005, and 406 prescriptions or 50 per hour on December 1, 2005, while having only one pharmacist on hand.

The May 2006 letter provided further detail regarding the substance of the prior termination letter, stating: "On December 2, 2005, the Department's reviewers consisting of a Health Program Auditor and Pharmacy Consultant directly observed a pharmacy technician dispensing medication intended for delivery to clients without direct supervision and control of a pharmacist, i.e., the person selected the prescription label; placed them [*sic*] on the counter; went to the shelves to get the medications; counted out the medications; put them in vials; put caps on the vials; put the medications in bags; returned the medication containers back to the shelves or discarded in the trash empty containers; placed the bags in an office adjacent to the pharmacy; and no pharmacist checked or viewed this person's work. The observed actions of the pharmacy technician coupled with the lack of direct supervision by a licensed pharmacist represent an immediate threat to harm and danger to both Medi-Cal beneficiaries and the general public. This is because a pharmacy technician does not possess the necessary knowledge and professional judgment to act independently while dispensing medications. Potential errors in dispensing of medication could result in serious or even fatal medication complications to clients of the pharmacy."

The letter said Pharmacy thus violated Business and Professions Code section 4115 as well as Medi-Cal regulations by submitting claims for services not performed by a pharmacist (Cal. Code Regs., tit. 22, § 51470 [provider shall not submit claims for benefits not provided]), misrepresenting the actual provider (Cal. Code Regs., tit. 22, § 51485 [provider shall not submit false or misleading statement of material fact]), and subjecting customers to the risk of error from inadequate supervision (Cal. Code Regs., tit. 22, § 51481 [provider shall not engage in conduct inimical to the public health, morals, welfare and safety of any Medi-Cal beneficiary]).

The May 2006 letter advised that the Department was terminating Pharmacy's provisional provider status under section 14043.27 (fn. 2, *ante*), which authorizes termination if (a) the provider has provided material information that was false or misleading at the time it was provided, and (b) the provider commits any violation of a federal or state statute or regulation governing the provider's profession or occupation and the violation

represents a threat of immediate jeopardy of significant harm to any Medi-Cal beneficiary or to the public welfare.

The May 25 letter also stated:

"Appeal Rights

"If you disagree with this action, you have the right to appeal termination of provisional provider status pursuant to Wel. & Inst. Code § 14043.65. This appeal procedure does include a formal administrative hearing under the Administrative Procedure Act. An appeal will not result in reactivation of any deactivated provider number during the appeal. If you decide to appeal, you must submit pertinent documents and all other relevant written evidence for consideration by the Program within 60 days of the date of this notification to:

"Office of Administrative Hearings and Appeals

"1029 J. Street, Suite 200

"Sacramento, CA 95814

"Upon receipt of all pertinent documents and all other relevant evidence supporting an appeal, the director or the director's designee shall review all submitted relevant documents and issue a decision within 90 days of the receipt of the evidence."

On May 30, 2006, Pharmacy sent a notice of appeal to the Office of Administrative Hearings and Appeals (OAHA). As indicated (fn. 1, *ante*), a section 14043.65 appeal is not a formal administrative hearing but a "paper hearing" in which the Medi-Cal provider (Pharmacy) must submit relevant evidence to support its appeal. Pharmacy's notice of appeal stated, "Please note that pertinent documentation and other written evidence for consideration by your office will follow." However, the referenced evidence did not follow.

On June 26, 2006, the Board, which is not a party to this case, sent a letter to Pharmacy stating the Board had investigated the Department's allegations of unlicensed activity, and "[o]ur analysis of the information and documentation received did not reveal sufficient evidence to determine that a violation of the pharmacy law occurred. As a result, the Board is closing the matter and no action will be taken." Pharmacy submitted the Board's letter to the hearing officer.

The Department presented to the hearing officer declarations of the Department auditor and consultant, dated December 9, 2005, describing their December 2, 2005, inspection of Pharmacy. Auditor Thomas Nguyen declared they arrived around 10:00 a.m., and "met and spoke with Luther Jenkins (the PIC) on one side of the dispensing drug area/counter. The pharmacy technician worked on the other side of the dispensing drug counter. I requested Mr. Jenkins to provide prescriptions and the Pharmacy's daily prescription log report for November 28, 30, and December 1, 2005. While I was working with Mr. Jenkins, Ms. Tang came and requested me observe [sic] the pharmacy technician. The pharmacy technician selected the prescription label, placed them [sic] on the counter, went to the shelves to get the medications, counted out the medications, put them in the vials, put caps on the vials, put the medications in the bags, returned the medications containers back to the shelves or discarded empty containers in the trash, and placed the bags in an office adjacent to the pharmacy. No pharmacist was observed to have checked or viewed the pharmacy technician's work. Ms. Tang asked the pharmacy technician where she went to pharmacy school. The pharmacy technician said that she did not go to pharmacy school . . . , she used to work for a small pharmacy and received her license due to her work experience. The pharmacy technician name [sic] is A[.] P[.] . . . . I observed no walk-in client during our forty-minute visit. I told Mr. Jenkins that I did not see any walk-in client. According to Mr. Jenkins, the patients lived in the area and they come during the day. The driver delivers the medication daily at 3 p.m. and using his own car. If necessary, Mr. Jenkins and the other owner (Mr. Reznik) will also deliver medications using their own cars. There were four pharmacy staffs [sic] in the Pharmacy. They are Mr. Jenkins, the receptionist, and two pharmacy technicians. The other pharmacy technician performed online billing duties."

Consultant Scholastica Tang declared: "While Mr. Nguyen was working with the [PIC] to request additional documents for the review, I toured the pharmacy and observed a person was dispensing medications on the other side of the counter. This person picked up the prescription labels, lined them on the counter, obtains [sic] the medication bottles from the shelves, counts the medications, put them into the vials, put on the labels, and then packs the vials in the bag. She then cleaned up the counter by returning the medication bottles back to the shelves where she originally had them or throwing away the empty medication bottles. She repeated the same process for other clients' prescriptions. When she had about five or six bags of prescriptions ready, she took them into the office adjacent to the pharmacy dispensing area. After observing her doing that for about 40 minutes, I went to get Mr. Nguyen. With Mr. Nguyen[] present I asked this person where she went to pharmacy school. She responded that she never went to Pharmacy school. . . . [She] was filling prescriptions independently for about 40 minutes. During this time, she

was never under the immediate, personal supervision and control of the PIC. The prescriptions filled were never checked against the original bottles or initialed by the pharmacist before the medications left the dispensing area."

In October 2006, the OAHA hearing officer issued an "APPEAL FINDING," recommending rejection of Pharmacy's appeal on the ground of failure of supervision and control by a pharmacist. The hearing officer said Pharmacy had not denied that events occurred as reported by the Department, and the only evidence submitted by Pharmacy was the Board's letter. "Counsel for [Pharmacy] requests that the determination from the California State Board of Pharmacy be considered. This Office concludes that the standards the Board requires for an action are meant for civil or criminal prosecution when professional licensure is at stake. This Office reviews the merits of the case as to whether the Provider is in compliance with the regulations regarding the service of Medi-Cal clientele. Counsel has not denied any of the contentions presented by [the Department] in the May 25, 2006 letter terminating provisional provider status. The conduct of the Provider in provision of services is noncompliant as demonstrated by [the Department]. The appeal to vacate the termination of provisional provider status is denied."

The Department adopted as its decision the hearing officer's appeal finding.

On February 2, 2007, Pharmacy filed a petition for traditional mandamus (Code Civ. Proc., § 1085). (Pharmacy concedes the caption's reference to "administrative" mandamus was a mistake.) Pharmacy alleged the Department ignored "evidence" that no technician dispensed or could have dispensed medication without the pharmacist's supervision, and the Department based its decision on unreliable evidence. Pharmacy tried to submit declarations which it had not submitted to the OAHA. Pharmacy also filed a motion to allow oral testimony at the hearing on the writ petition and a motion for judgment.

The Department opposed the writ petition and motions, arguing the court should not entertain evidence Pharmacy failed to present at the administrative level. The Department argued Pharmacy could not rely on items presented at the earlier informal meeting with Jan Inglish, which was not part of the appeal procedure. The Department also disputed Pharmacy's claim that its "evidence" was overwhelming.

On November 28, 2007, the trial court entered a judgment denying the writ petition and stating, "At the administrative level, [Pharmacy] had the burden of presenting to the administrative hearing officer 'any supporting evidence' in furtherance of its administrative appeal. The only evidence that [Pharmacy]

submitted was a letter from the Board of Pharmacy stating it was not going to pursue action against the pharmacy's license. [Pharmacy] offered the hearing officer no other evidence to challenge the Department's basis for denying the provisional Medi-Cal provider's license. Before this Court, [Pharmacy] has the burden of demonstrating that [the Department's] decision of October 19, 2006, was arbitrary or capricious or wholly lacking in evidentiary support. [Pharmacy] failed to carry this burden. The Court finds no basis to conclude that [Pharmacy] was in any way [misled] concerning the nature of the appeal process . . . ."

The trial court accordingly entered judgment in favor of the Department and against Pharmacy.

## DISCUSSION

### I. *Standard of Review*

We said in *Marvin Lieblein, Inc. v. Shewry, supra,* 137 Cal.App.4th 700: "In enacting section 14043 et seq., the Legislature chose to make the Department's decisions appealable under Code of Civil Procedure section 1085 (ordinary mandamus) rather than Code of Civil Procedure section 1094.5 (administrative mandamus). (§ 14043.65, subd. (a).)[4] Under Code of Civil Procedure section 1085, a writ can be granted only where the administrative agency has a clear, present, and usually ministerial duty to perform, and the petitioner has a clear, present, and beneficial right to the performance of that duty. [Citations.]

" 'Where a statute leaves room for discretion, a challenger must show the official acted arbitrarily, beyond the bounds of reason or in derogation of the applicable legal standards. [Citation.] Where only one choice can be a reasonable exercise of discretion, a court may compel an official to make that choice. [Citation.]' . . .

" 'The trial court's review of the respondent's action is limited to determining whether the actions were arbitrary, capricious, entirely lacking in evidentiary support or contrary to required legal procedures. [Citations.]' " (*Marvin Lieblein, Inc. v. Shewry, supra,* 137 Cal.App.4th at pp. 713–714.)

Where, as here, the trial court made no new factual findings, our review is the same as that of the trial court. (*Shapell Industries, Inc. v. Governing Board*

---

[4] Section 14043.65, subdivision (a) provides as pertinent: "The decision of the director or the director's designee shall be final. Any further appeal shall be required to be filed in accordance with Section 1085 of the Code of Civil Procedure."

(1991) 1 Cal.App.4th 218, 233 [1 Cal.Rptr.2d 818] (*Shapell*); *Lewin v. St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 387 [146 Cal.Rptr. 892].)

Although plaintiff invokes the substantial evidence test, the question whether agency action is "entirely lacking in evidentiary support" is not the same as a substantial evidence test. (*American Board of Cosmetic Surgery v. Medical Board of California* (2008) 162 Cal.App.4th 534, 547–548 [75 Cal.Rptr.3d 574] (*American Board of Cosmetic Surgery*); *Shapell, supra*, 1 Cal.App.4th at pp. 231–232.)

In *American Board of Cosmetic Surgery, supra*, 162 Cal.App.4th 534, we said: "Ordinary mandamus may be used to compel the performance of a duty that is purely ministerial in nature [citation] or to correct an abuse of discretion [citation]. When reviewing the exercise of discretion, '[t]he scope of review is limited, out of deference to the agency's authority and presumed expertise: "The court may not reweigh the evidence or substitute its judgment for that of the agency. [Citation.]" ' . . . 'In general . . . the inquiry is limited to whether the decision was arbitrary, capricious, or entirely lacking in evidentiary support . . . .' [Citation.] When making that inquiry, the ' " 'court must ensure that an agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute.' [Citation.]" ' " (*Id.* at pp. 547–548.)

*Shapell, supra*, 1 Cal.App.4th 218, said: "The appropriate degree of judicial scrutiny in any particular case is perhaps not susceptible of precise formulation, but lies somewhere along a continuum with nonreviewability at one end and independent judgment at the other. [Citation.] Since the ultimate question is whether the agency has abused its discretion, the answer is one of degree. In each case the court must satisfy itself that the order was supported by the evidence, although what constitutes reasonable evidentiary support may vary depending upon the nature of the action. [Citations.] A proceeding which has determined individual rights in a factual context will warrant more exacting judicial review of the evidence. Otherwise courts will tend to defer to the presumed expertise of the agency acting within its scope of authority. . . . [¶] For our purposes we find useful the test articulated by our Supreme Court in *California Hotel & Motel Assn. v. Industrial Welfare Com.* [(1979)] 25 Cal.3d 200 [157 Cal.Rptr. 840, 599 P.2d 31]: 'A court will uphold the agency action unless the action is arbitrary, capricious, or lacking in evidentiary support. A court must ensure that an agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choices made, and the purposes of the enabling statute.' [Citation.]" (*Shapell, supra*, 1 Cal.App.4th at p. 232.)

*Shapell*'s remark about the continuum was cited with approval by the California Supreme Court, which added that, as opposed to quasi-legislative administrative decisions which are treated with deference, "informal actions do not merit such deference, and therefore lie toward the opposite end of the continuum." (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 575–576 [38 Cal.Rptr.2d 139, 888 P.2d 1268] [extra-record evidence is generally not admissible in traditional mandamus action challenging quasi-legislative administrative action under environmental law].)

*Shapell*'s reasoning is sound and has been followed in other cases. (E.g., *McGill v. Regents of University of California* (1996) 44 Cal.App.4th 1776, 1785–1786 [52 Cal.Rptr.2d 466].) We recognize that not everyone acknowledges a distinction between "devoid of evidentiary support" and "substantial evidence." (E.g., *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361, 374 [87 Cal.Rptr.2d 654, 981 P.2d 499] [§ 1085 review of quasi-legislative action was "substantial evidence test," whether decision was arbitrary, capricious or "entirely lacking in evidentiary support," under traditional substantial evidence test]; *Plastic Pipe & Fittings Assn. v. California Building Standards Com.* (2004) 124 Cal.App.4th 1390, 1406 [22 Cal.Rptr.3d 393] [review of quasi-legislative action was limited to determining whether agency action was arbitrary, capricious, or "entirely lacking in evidentiary support," which "generally means that a court cannot disturb the agency's decision if substantial evidence in the administrative record supports the decision"]; *Warmington Old Town Associates v. Tustin Unified School Dist.* (2002) 101 Cal.App.4th 840, 850 [124 Cal.Rptr.2d 744] [" 'inquiry into arbitrariness or capriciousness is like substantial evidence review in that both require a *reasonable basis* for the decision' "].) Other cases simply say the standard of review is substantial evidence. (E.g., *Saathoff v. City of San Diego* (1995) 35 Cal.App.4th 697, 700 [41 Cal.Rptr.2d 352].)

It seems appropriate to apply *Shapell* here, because even if the administrative action is characterized as informal, the Legislature has given the Department discretion to terminate Medi-Cal provider status if a pharmacy violates regulations in a way that threatens public welfare. (§ 14043.27; fn. 2, *ante.*) The fact question is not merely whether the pharmacist had his eyes fixed on the technician while she filled prescriptions, but whether the pharmacist exercised adequate supervision and control to protect public welfare. This is a question within the Department's expertise.

II. *Extra-record Evidence*

Pharmacy argues we should consider extra-record evidence (apparently the declarations of Jenkins and the pharmacy technician that are in the record on

appeal), because extra-record evidence may be considered in traditional mandamus cases. Although Pharmacy also refers to documents it assertedly presented to the Department at the March 2006 meeting, no such documents are before us. We shall conclude Pharmacy fails to show grounds to consider extra-record evidence.

We preliminarily address Pharmacy's suggestion that the extra-record evidence includes the Board's letter declining to take action on the charge of unlicensed activity. We observe, as did the trial court, that the hearing officer *did* consider the Board's letter indicating insufficient evidence of unlicensed activity. The hearing officer said, "This Office concludes that the standards the Board requires for an action are meant for civil or criminal prosecution when professional licensure is at stake. This Office reviews the merits of the case as to whether the Provider is in compliance with the regulations regarding the service of Medi-Cal clientele." Pharmacy makes no argument and presents no legal analysis demonstrating reversible error on this point, and therefore the matter is forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273].) Moreover, contrary to Pharmacy's view, the Board's letter did not "clear[] [Pharmacy] of any alleged violation of California pharmacy law." The Board merely said it had insufficient evidence. We do not know what evidence was presented to the Board. Accordingly, the Board's letter is without consequence in this appeal.

As to the other evidence, Pharmacy cites without discussion two cases for the proposition that extra-record evidence is admissible in traditional mandamus cases. *Friends of the Old Trees v. Department of Forestry & Fire Protection* (1997) 52 Cal.App.4th 1383 [61 Cal.Rptr.2d 297] (*Friends*) held judicial review of the Forestry Department's approval of a timber harvest plan should not have proceeded by traditional mandamus, which allows the admission of extra-record evidence, but by administrative mandamus (which generally does not allow the admission of extra-record evidence). *Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320 [4 Cal.Rptr.2d 897] (*Garrick*), said that, because traditional mandamus proceedings allowed the court to consider extra-record evidence, substantial evidence review obliged the appellate court to consider all data considered by the education board (in imposing school facilities fees on building permits) which was also introduced in the trial court, whether or not the evidence was presented at public hearings to receive community input before the board adopted the resolution approving the fees.

Pharmacy fails to explain how either *Friends* or *Garrick* supports admission of extra-record evidence in this case. We are not required to entertain contentions lacking adequate legal analysis. (*In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672–673, fn. 3 [33 Cal.Rptr.2d 13].)

■ Moreover, extra-record evidence is not necessarily admissible in all traditional mandamus cases. The Supreme Court has held that extra-record evidence is generally inadmissible in traditional mandamus actions challenging quasi-legislative administrative decisions under the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.), though extra-record evidence may be admitted in traditional mandamus actions challenging ministerial or informal administrative actions. (*Western States Petroleum Assn. v. Superior Court, supra,* 9 Cal.4th at p. 576.)

Pharmacy offers no analysis of these different types of traditional mandamus cases, and this case does not fall neatly within those categories. The administrative action was not ministerial but rather involved a discretionary decision whether the provider violated regulations in a way that threatened the public welfare. (§ 14043.27; fn. 2, *ante.*) This was not a quasi-legislative decision, since it did not involve formulation of a rule for widespread application. (*Shapell, supra,* 1 Cal.App.4th at p. 231.) The administrative appeal was not "informal" in the sense of "an . . . administrative decision made as a result of a proceeding which did not require the taking of evidence or a verbatim transcript of the proceedings." (*Friends, supra,* 52 Cal.App.4th at p. 1391 [approval of timber harvest plan was not informal action; 600-page administrative record was adequate for review].) Although there was no oral argument, section 14043.65 did require the taking of evidence. We said in *Carrancho v. California Air Resources Board* (2003) 111 Cal.App.4th 1255, 1269 [4 Cal.Rptr.3d 536], that agency actions in developing a diversion plan (for burning rice after harvest) and issuing a progress report were not " 'informal administrative actions' " for the purpose of admitting extra-record evidence. Even though no formal hearing was held or required, there were public meetings and ample opportunity for input from the public. (*Id.* at p. 1270.)

Here, the Department came to an adjudicatory decision dependent on facts of the particular case, and Pharmacy fails to show any reason why it should have been allowed to add extra-record evidence in the trial court.

Section 14043.65 (fn. 1, *ante*) expressly required Pharmacy to "submit the written appeal along with all pertinent documents and all other relevant evidence to the [Department's] director or to the director's designee . . . ." Pharmacy notes the statute does not say anything about submitting evidence to the OAHA hearing officer. However, the OAHA was the Department's "designee" under section 14043.65, as stated in the Department's letter of May 25, 2006, which advised Pharmacy of its right to an administrative appeal under section 14043.65 and further advised, "If you decide to appeal, you must submit pertinent documents and all other relevant written evidence for consideration by the Program within 60 days of the date of this notification to: [¶] Office of Administrative Hearings and Appeals [address]."

Pharmacy understood it was supposed to submit evidence to the hearing officer, because its notice of appeal, addressed to the OAHA, said, "Please note that pertinent documentation and other written evidence for consideration by your office will follow." Yet nothing followed (except the Board letter).

Pharmacy argues Inglish should have forwarded to the hearing officer the information presented in the informal March meeting. However, Pharmacy cites no authority supporting its position and no evidence that it expected Inglish to forward any such information to the hearing officer, or that any such expectation would have been reasonable, or that Inglish knew or should have known Pharmacy expected it. To the contrary, when it filed its OAHA appeal, Pharmacy said its evidence would follow and wrote a letter to Inglish complaining it appeared the Department "completely tossed" the information submitted by Pharmacy at the March meeting.

■ Pharmacy argues it "substantially complied" with section 14043.65 (fn. 1, *ante*) by giving information to Inglish at the March 2006 meeting, months before Pharmacy filed its notice of administrative appeal in May 2006. Pharmacy cites cases such as *Jamison v. State of California* (1973) 31 Cal.App.3d 513 [107 Cal.Rptr. 496], which merely held that substantial compliance with a claim-filing statute sufficed. *Jamison* held a public entity served with a tort claim for money damages should have forwarded the claim to the State Board of Control (*id.* at p. 518), but that holding was overruled by the same court in *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 770 [115 Cal.Rptr.2d 705]. Moreover, even assuming potential applicability of the substantial compliance doctrine, Pharmacy fails to meet the standard of its own cited authority, that relevant factors in determining substantial compliance include whether the purpose of the statute has been satisfied and whether there has been a bona fide attempt to comply with the statute. (*Insolo v. Imperial Irr. Dist.* (1956) 147 Cal.App.2d 172, 175 [305 P.2d 176].) Here, Pharmacy shows no bona fide attempt to submit its evidence to the OAHA, as it knew it must, and the clear purpose of the statute—to afford a fair administrative appeal—is not satisfied by allowing one party to withhold its supporting evidence from the hearing officer and claim the opposing party should have given it to the hearing officer.

Pharmacy had the burden to present its evidence at the administrative appeal, and it fails to show an excuse for its failure to do so.

We conclude Pharmacy fails to show a basis for consideration of extra-record evidence.

III. *Sufficiency of Evidence*

As indicated, we will uphold the agency's decision unless it is devoid of evidentiary support. This test calls upon us to ensure that the administrative agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choices made, and the purposes of the enabling statute. (*California Hotel & Motel Assn. v. Industrial Welfare Com., supra,* 25 Cal.3d 200; *Shapell, supra,* 1 Cal.App.4th at p. 232.)[5]

■ The agency considered all evidence presented as part of the administrative appeal. The purpose of the statute allowing termination of Medi-Cal provider status is "to ensure the proper and efficient administration of the Medi-Cal program" (§ 14043) and to ensure that providers not violate governing statutes and regulations in a manner which "represents a threat of immediate jeopardy or significant harm to any Medi-Cal beneficiary or to the public welfare." (§ 14043.27, subd. (c)(9).) Clearly, there is a rational connection between a threat to public welfare and an unauthorized, unsupervised person distributing drugs into containers for delivery to customers' homes.

Abundant evidentiary support for the decision is found in the declarations of auditor Thomas Nguyen and consultant Scholastica Tang, which were submitted to the hearing officer and which are described at length in the factual and procedural background, above.

Pharmacy suggests the trial court mistakenly believed that Pharmacy had the burden of presenting *to the administrative hearing officer* any supporting evidence in furtherance of its administrative appeal. We have already rejected Pharmacy's position on this point.

Pharmacy argues the trial court erred when it found that the only evidence Pharmacy offered in its administrative appeal was the letter from the Board. Pharmacy says it also presented live "testimony" from Jenkins, photographs, and written statements. However, Pharmacy is referring to material it presented in the informal meeting with Inglish before the appeal. We have explained these items do not count because they were not presented to the hearing officer.

Pharmacy argues there was insufficient evidence, because the inspectors merely saw the technician *filling* prescriptions, not *dispensing* them, i.e., not handing them over to customers. However, the inspectors' declarations

---

[5] Pharmacy invokes the substantial evidence test, which measures the quantum of proof adduced and assesses whether the matters at issue have been established by a solid, reasonable and credible showing. (*Dept. of Parks & Recreation v. State Personnel Board* (1991) 233 Cal.App.3d 813, 831–832 [284 Cal.Rptr. 839].) Even under that test, Pharmacy's appeal fails.

established that the technician filled prescriptions and took them out of the pharmacy area while the pharmacist was busy with one of the inspectors. The auditor's declaration also said that Jenkins said many prescriptions were delivered to customers at their homes, and the location where the technician placed the prescriptions was the pickup point where a delivery person (not all deliveries were by the pharmacist) would pick them up and deliver them to customers' homes. There was no evidence of any control system to make sure the pharmacist checked them before they were delivered. This constitutes sufficient evidence supporting denial of Pharmacy's writ petition.

Even if we were to consider the technician's statement that she placed the medications there for the pharmacist to check them before he dispensed them, the technician did not dispute that the drugs were delivered to people in their homes.

Pharmacy considers it suspicious that the inspectors' declarations were dated December 9, 2005—before the Department took any action (in Feb. 2006) to terminate Medi-Cal provider status. We have no problem with inspectors preparing written statements, even in the form of declarations, while the events are still fresh in their minds. We reject Pharmacy's unsupported accusation that the timing of the declarations and the fact they were created reflects dishonesty.

We conclude the agency decision was not devoid of evidentiary support.

### IV. *Arbitrary/Capricious and Due Process*

Pharmacy argues the Department's actions were arbitrary and capricious and violated the due process clause of the federal and state Constitutions.

Pharmacy's due process argument is forfeited for failure to provide an adequate legal and factual analysis. (*Badie v. Bank of America, supra*, 67 Cal.App.4th at pp. 784–785.) Pharmacy's legal analysis is that due process "prohibits state agencies from following arbitrary procedures respecting entitlement benefits. C.C.P. § 1085; *Goldberg v. Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011]. It is a well-established tenet of due process that both the procedures and criteria surrounding the granting of such benefits must prevent against arbitrary and erroneous results. *Matthews v. Eldridge* (1976) 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893]; *Martinez v. Ibarra* (D.C. Colo. 1991) 759 F.Supp. 664."

Pharmacy then launches into an attack claiming that (1) the Department ignored "compelling evidence"—the pharmacist's declaration that unsupervised dispensing of medicine was impossible and that he contacted the

auditor who said he did not recall any drugs being dispensed without supervision and did not have notes of his inspection; (2) the hearing officer "falsely" asserted Pharmacy did not deny the Department's facts; (3) the Department's questioning about the owners' country of origin and income displayed bias and prejudice; and (4) during the inspection, the Department's auditor improperly asked one of Pharmacy's owners for help in filling out a Medicare application for the auditor's father.

Pharmacy offers no legal analysis whatsoever as to how any of these assertions violate due process. Most of the assertions have nothing to do with the ground upon which Pharmacy's Medi-Cal provider status was ultimately terminated—the dispensing of drugs by a technician unsupervised by the pharmacist. The supposedly "compelling evidence" regarding supervision was ignored because Pharmacy failed to present it to the hearing officer. Moreover, the evidence was not that compelling. Even assuming we were to credit the pharmacist's recitation of hearsay about the inspector's alleged failure of recollection, such a failure of recollection months after the inspection is inconsequential and does not create a contradiction with the inspector's declaration prepared a mere week after the inspection. As to the declaration of Jenkins, who is no longer the PIC, he attested the "physical lay-out of Golden Drugs makes it impossible for a pharmacy technician to work without being observed by the pharmacist." This statement is obviously and facially incorrect. A person can be inches from another, yet unobserved where, for example, the other person has his eyes closed or his back turned. Moreover, the close quarters of the pharmacy area is not dispositive, given that the technician moved the drugs out of the pharmacy area.

We conclude Pharmacy has forfeited its due process argument. We therefore need not address the Department's argument that a medical provider has no due process right to continued participation in the Medi-Cal program—a position which arguably conflicts with our statement in *Marvin Lieblein, Inc. v. Shewry, supra,* 137 Cal.App.4th at page 720, where, in the course of upholding the Department's denial of a pharmacist's application for continued enrollment as a Medi-Cal provider, we said, "The liberty interest of a Medi-Cal applicant debarred from the program for violating [regulations] implicates constitutional due process. [Citation.] However, it does not follow that any particular procedure is constitutionally required in an administrative hearing of the applicant's appeal." (*Ibid.* [due process was not violated by inability to present live testimony at § 14043.65 administrative appeal].)

We conclude Pharmacy fails to show grounds for reversal.

## DISPOSITION

The judgment is affirmed. The Department shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)–(2).)

Blease, Acting P. J., and Robie, J., concurred.